[No. H032868. Sixth Dist. Apr. 24, 2009.]

In re the Marriage of DARSHANA VARIA and DATTAPRASANNA G. NADKARNI.
DARSHANA VARIA NADKARNI, Appellant, v.
DATTAPRASANNA G. NADKARNI, Respondent.

**COUNSEL**

Hogan Holmes & Usoz, Stephen J. Usoz; Schlepphorst & Emede, Julie S. Saffren and Paul Klembeck for Appellant.

Law Offices of George G. Benetatos and George G. Benetatos for Respondent.

**OPINION**

**BAMATTRE-MANOUKIAN, Acting P. J.—**

## I. INTRODUCTION

The marriage of appellant Darshana Varia Nadkarni (hereafter Darshana) and respondent Dattaprasanna G. Nadkarni (hereafter Datta)[1] ended in May 2005. Since then, the parties have been involved in a child custody dispute regarding their two teenaged children. In April 2007, Datta, who is Darshana's former husband, accessed an e-mail account used by Darshana and obtained copies of e-mails between his former wife and third persons, including her attorney. According to Datta, the parties used the e-mail account to communicate about their children, and he accessed the account after discovering that Darshana had left the children alone while she traveled to India. Datta attached copies of Darshana's e-mails to documents he filed in the trial court in their child custody matter.

---

[1] We refer to the parties as Darshana and Datta in accordance with their usage in the proceedings below.

Darshana, on the other hand, asserts that the e-mail account belonged to her and was used for her personal and professional business. She applied for and received a temporary restraining order and order to show cause under the Domestic Violence Protection Act (DVPA) (Fam. Code, § 6200 et seq.)[2] that ordered Datta to, among other things, "not engage in any behavior that has been or could be enjoined such as blackmail, slander, stalking, threatening, harassing, and disturbing the peace of [Darshana] or third parties through the use of personal information accessed through [Darshana's] email." Darshana sought to extend the restraining order, but after a proceeding on the order to show cause held in March 2008, the trial court dismissed her application on April 15, 2008.

On appeal, Darshana contends that the trial court erred in dismissing her application for a restraining order on the ground that Datta's alleged conduct was insufficient to constitute abuse within the meaning of the DVPA. For the reasons stated below, we find that Darshana's application for a restraining order under the DVPA was facially sufficient. Therefore, we will reverse the April 15, 2008 order dismissing the application for a restraining order and remand the matter for a hearing on the merits.

## II. FACTUAL AND PROCEDURAL BACKGROUND

During their long-term marriage, Darshana and Datta had a son and a daughter. Darshana filed a petition for marital dissolution on June 21, 2002. The record indicates that their "divorce" was "final" in May 2005 and a child custody order awarding joint legal and physical custody of the children was entered on May 2, 2006.

On July 17, 2007, Datta filed a declaration in support of his "motion to reaffirm joint legal custody, modification of child support and other relief." Datta stated that on May 2, 2006, the trial court had granted Darshana's request for " 'temporary sole custody pending family mediation.' " (Underscoring omitted.) Datta also filed a supplemental declaration on August 31, 2007, in which he accused Darshana of "gross negligence" in leaving their children, aged 14 and 16, alone while she was in India during March and April of 2007 without informing him of her absence or providing him with contact information. (Underscoring omitted.)

Datta attached to his August 31, 2007 supplemental declaration copies of several e-mails between Darshana and third persons, including her family law attorney and the children, that were sent in March and April of 2007. Datta stated in his supplemental declaration that he "had no choice" but to access

---

[2] All further statutory references are to the Family Code unless otherwise indicated.

Darshana's e-mails because his "kids' safety was at stake." (Underscoring omitted.) He further stated that "in sheer panic and desperation I tried to access the email accounts which I had myself set up for [Darshana] and my son several years ago, to see if I had missed any emails from her regarding her international travel plans."

According to Datta, the e-mails showed that when Darshana was contacted by Child Protective Services (which had begun an investigation of the children's welfare at Datta's request), she falsely stated that she had arranged for her brother to look after the children in her absence. Datta also asserted in his supplemental declaration that the e-mails showed that Darshana had instructed the children to lie to him regarding her whereabouts. Additionally, Datta claimed that he had "procured more evidence from the above mentioned email accounts, which could be considered inflammatory and sensitive to certain others. I have no intention to share these emails other than as evidence in future legal proceedings."[3]

On October 17, 2007, Darshana filed a Judicial Council form DV-100 request for a temporary restraining order under the DVPA, section 6200 et seq.[4] In her supporting declaration, filed October 17, 2007, Darshana stated that she became aware in August 2007 that Datta had accessed her e-mail account when he attached copies of her e-mail messages to documents that he filed in the trial court in their child custody matter.[5] She asserted that she had created the e-mail account after the parties separated and she had never authorized Datta or any third party to use the account or given them the password. According to Darshana, she used the e-mail account for several confidential matters, including communicating with her family law attorney, communicating with her clients in her executive search and employment counseling business, storing her financial records, storing her mother's financial and medical records, communicating with third parties regarding her mother's finances, and communicating with third parties regarding potential job candidates.

---

[3] Datta also attached copies of Darshana's e-mails to his "Objections to the recommended order of the court per an assessment," which he filed in superior court on August 15, 2007.

[4] On September 11, 2007, Darshana filed an application for an order reissuing an order to show cause previously issued on July 17, 2007. The record lacks a copy of the July 17, 2007 order to show cause and the application for the July 17, 2007 order to show cause.

[5] Darshana states that she filed the two documents to which Datta attached her e-mails " 'conditionally under seal pending court order' " in the trial court as exhibits A and B to her October 17, 2007 declaration. However, one of the documents, Datta's August 31, 2007 supplemental declaration and the attached e-mails, was included in the record without sealing. The exhibits were filed under seal in this court.

Darshana further asserted in her October 17, 2007 declaration that "I am also quite disturbed by [Datta's] statement [in his August 31, 2007 supplemental declaration] . . . 'that I have procured more evidence from the above-mentioned email accounts, which could be considered inflammatory and sensitive to certain others. I have no intention to share these emails other than as evidence in future legal proceedings.' Given that the information was in my email account, I believe this statement is a direct threat that unless I succumb to his demands in the family law case, he will interfere and directly impact my business relationships. I also believe he will file my personal emails in the family court action in order to embarrass me, and to injure my relationships with my family members and third-parties, including professional clients." (Boldface omitted.)

Additionally, Darshana claimed that Datta had used the information obtained from her e-mail account to subpoena the records of third parties, including her business contacts, and to find out what social events she would be attending. She stated that Datta "has told others that he knew which social events I would be attending within the past three months. I was unable to determine . . . how [he] became aware of my schedule until learning of his access to my email account. His knowledge of my attendance at these activities has caused me fear for my safety based on his prior treatment of me during our marriage. [Datta] repeatedly abused me physically during our marriage. The most recent incident was in November, 1999 when he beat me viciously and repeatedly in front of our children. He was convicted and sentenced to 20 days in jail."[6]

Based on these allegations, Darshana requested an ex parte temporary restraining order that, with respect to the e-mails, barred Datta from (1) "engag[ing] in any behavior that has been or could be enjoined such as blackmail, slander, stalking, threatening, harassing, and disturbing the peace of [Darshana] or third parties through the use of personal information accessed through [Darshana's e-mail]"; (2) "using, delivering, distributing, printing, copying, or disclosing the messages or content of [Darshana's] email account to others"; and (3) attempting to access or "otherwise interfere with [her] internet service provider accounts . . . ." Darshana also requested that Datta be ordered to deliver to her attorney within three business days of service of the order "all electronically downloaded media accessed from [her] email account," "all hardcopies of any and all information accessed through

---

[6] The record includes Datta's petition for modification or change of terms of probation, filed September 5, 2001, in which Datta sought and received "record clearance pursuant to [Penal Code] Section 1203.4 [authorizing the defendant to withdraw a guilty plea or the court to set aside a guilty verdict after the defendant fulfills the conditions of probation]." The record further reflects that Datta was convicted of misdemeanor spousal abuse (Pen. Code, § 273.5) on March 17, 2000.

[her] email account," and "the identities of all third parties to whom [Datta] has provided copies of or access to information obtained from [her] email account."

On October 17, 2007, the trial court issued a temporary restraining order on Judicial Council form DV-110 that restricted Datta's conduct with regard to Darshana's e-mails as she had requested in her application.[7] The temporary restraining order also included an order to show cause why the restraining order should not be extended for up to five years, and set a hearing date of November 5, 2007 (later continued to Dec. 13, 2007).

Datta filed an answer to the order to show cause on Judicial Council form DV-120 on December 10, 2007. He opposed the extension of the restraining order for the reasons stated in his supporting declaration. First, in contrast to Darshana's statements about the creation of her e-mail account, Datta asserted that he had created the account and selected the password sometime in 2001 or 2002 for the purpose of allowing the parties to communicate about their marital dissolution matter and their children while Darshana was traveling. Second, Datta maintained that "[u]p until August 2007, I always had access to this email account with the knowledge and agreement of [Darshana], through our joint knowledge of the password . . . which I began when I created this email account."

Datta also emphasized that he accessed the account in April 2007 when he was unable to contact Darshana and had received "evasive replies" from his children and Darshana's attorney regarding her whereabouts. He explained that "[a]t this point, I accessed [the] email account to see if it disclosed [Darshana's] whereabouts. I discovered through several emails she was in India with her mother. I was alarmed because I believed my children were abandoned by [Darshana] with no proper adult supervision, especially during the evenings. [¶] I believed the foregoing email admissions by [Darshana] were relevant to pending family mediation hearings that were to commence on May 16, 2007. The hearings included [Darshana's] demand for 100% legal and physical custody, to which I objected. I believed the several emails supported my opposition to [Darshana] receiving 100% legal and physical custody."

Datta's answer also included his evidentiary objections and his argument that the application for a restraining order should be denied because Darshana's declaration failed to set forth any facts that came within either the

---

[7] Datta's attorney sent Darshana's attorney copies of the e-mails in compliance with the October 17, 2007 temporary restraining order with a cover letter dated December 10, 2007. The letter of December 10, 2007, also stated that only one e-mail copy had been given to a third party.

DVPA, section 6320, or the civil harassment statute, Code of Civil Procedure section 527.6, subdivision (b).

The parties appeared at the hearing on the order to show cause that was set for December 13, 2007, and advised the trial court that they had agreed to continue the hearing as a long cause matter. The trial court then set a hearing date of March 5, 2008, and continued the temporary restraining order until that time.

Darshana filed a trial brief on March 4, 2008. She argued that a restraining order was warranted under the DVPA (§ 6320), the civil harassment statute (Code Civ. Proc., § 527.6, subd. (b)) and the civil stalking statute (Civ. Code, § 1708.7) because, in addition to physical violence, "any type of knowing and willful behavior that harasses or disturbs the peace of [Darshana] also meet[s] the requirements for a restraining order." Additionally, based on her allegations that Datta had a history of abusing her physically and emotionally, Darshana asserted that she feared that he would continue to use the "private and privileged" information that he had obtained from her e-mails "to control, harass, and abuse" her if he were not enjoined from such conduct.

Darshana therefore sought a permanent restraining order as requested on her application with a duration of no less than 10 years. She also sought an order permanently sealing the e-mails attached to the documents that Datta had filed in the trial court and that she had filed conditionally under seal, and requested an award of attorney fees and monetary sanctions.

The record reflects that Datta subsequently brought a motion for judgment on the pleadings. However, the motion for judgment on the pleadings was not included in the record on appeal, which contains a clerk's certificate attesting that after a diligent search, the superior court clerk was unable to locate the motion for judgment on the pleadings or the supporting points and authorities and declaration. The clerk's certificate also states that the filing date of the motion for judgment on the pleadings is "unknown." However, the record contains Darshana's opposition to the motion for judgment on the pleadings, filed on March 4, 2008. She argued that the motion should be denied because it was untimely and because Datta's conduct with respect to her e-mails fell within the scope of the abuse that may be enjoined under the DVPA (§ 6320) and the civil harassment statute (Code Civ. Proc., § 527.6, subd. (b)). Specifically, Darshana contended that a "reasonable person who has been subject to [Datta's] history of abusive and harassing behavior, as [she] has, would be in reasonable fear that he will use this information to harm her business and livelihood, her reputation in the cultural community, and her personal relationships."

The parties appeared on Darshana's application for a permanent restraining order on the hearing date of March 5, 2008. The trial court initially inquired as to whether the domestic violence matter was entitled to calendar preference on the court's morning calendar. The parties disagreed, with Darshana's attorney noting that she had several witnesses ready to testify. However, the court decided to hear the other matters on calendar first. When the application for a restraining order was called in the afternoon, the trial court stated, "Over the noon hour, I had a chance to review this file and also . . . [the] motion for judgment on the pleadings. I know I'm the judge who originally signed the temporary restraining order, but I have to tell you that it was kind of an iffy thing for me. [¶] I think the complaint of conduct may very well be illegal, but I don't think that it rises to the level of conduct that is amenable to the Domestic Violence Prevention Act. So I'm inclined to dismiss the case without prejudice to you filing a civil action in the Superior Court." Darshana's attorney objected that the motion for judgment on the pleadings had not been filed. The trial court responded, "Actually, because I got your opposition, I wanted to see what the basis of the motion was. So I secured it." Datta's attorney then advised the court that he had made an ineffectual attempt to file the motion for judgment on the pleadings on the morning of the hearing and intended to file the motion that afternoon.

In a written order filed on April 15, 2008, the trial court stated that Datta had "submitted his motion for judgment on the pleadings" and ordered that "[a]fter due consideration of [Datta's] motion" and the argument of counsel, Darshana's application for a restraining order was dismissed. Darshana filed a timely notice of appeal on April 25, 2008.

## III. DISCUSSION

On appeal, Darshana argues that the trial court erred in dismissing her application for a restraining order under the DVPA (§ 6200 et seq.) because (1) the rules governing challenges to the sufficiency of the pleadings in a family law matter do not permit a motion for judgment on the pleadings; (2) the court failed to provide an evidentiary hearing on the merits, which is required where an application for a restraining order is facially sufficient under the DVPA; (3) her application for a restraining order included a showing of abuse sufficient for the issuance of a DVPA restraining order; and (4) the court failed to provide the requisite statutory "procedural safeguards," including calendar preference, consideration of Datta's criminal history, and consideration of whether denial of the application for a restraining order will jeopardize the applicant's safety.

We will begin our evaluation of Darshana's claims of trial court error with an overview of the DVPA (§ 6200 et seq.) and the standard of review that applies to an order denying an application for a restraining order under the DVPA.

## A. *The Domestic Violence Prevention Act*

The DVPA (§ 6200 et seq.) authorizes the trial court to issue a restraining order "for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300; see *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 421 [67 Cal.Rptr.3d 317].) A restraining order may issue under the DVPA either "enjoining specific acts of abuse," "excluding a person from a dwelling," or "enjoining other specified behavior" and may issue ex parte, after notice and a hearing, or in a judgment. (§ 6218.)

For purposes of the DVPA, " 'abuse' means any of the following: [¶] (a) Intentionally or recklessly to cause or attempt to cause bodily injury. [¶] (b) Sexual assault. [¶] (c) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another. [¶] (d) *To engage in any behavior that has been or could be enjoined pursuant to Section 6320.*" (§ 6203, italics added; see *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334 [67 Cal.Rptr.3d 286] (*Nakamura*).)

Section 6320 provides in part that "[t]he court may issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members." (*Id.*, subd. (a); see *Nakamura, supra*, 156 Cal.App.4th at p. 334.)

A DVPA restraining order may be issued in an independent action brought by a former spouse who has been the subject of abuse within the meaning of the DVPA. (§§ 6301, subd. (b) & 6211; *Nakamura, supra*, 156 Cal.App.4th at p. 335.) The procedure for obtaining an ex parte temporary restraining order is set forth in section 240 et seq. Under section 242, when an application for a temporary restraining order is granted, the order must include an order to show cause why a permanent restraining order should not

be granted and set a hearing date within 20 or 25 days.[8] Before the hearing on the order to show cause, the trial court is required to "ensure that a search is or has been conducted to determine if the subject of the proposed order has any prior criminal conviction" for certain felony and misdemeanor offenses, including a misdemeanor conviction involving domestic violence. (§ 6306, subd. (a).) If the criminal investigation reveals that the subject of the proposed order has been convicted of one of the offenses enumerated in section 6306, subdivision (a), the trial court must consider the conviction before deciding whether to issue a DVPA restraining order. (§ 6306, subd. (b).)

■ The DVPA also specifies the duration of "the personal conduct, stay-away, and residence exclusion orders" that may issue after notice and a hearing. (§ 6345, subd. (a).) In the discretion of the court, such restraining orders "may have a duration of not more than five years" and "may be renewed, upon the request of a party, either for five years or permanently, without a showing of any further abuse . . . ." (§ 6345, subd. (a).)

The standard of review for an order denying injunctive relief is abuse of discretion, because " ' "granting, denial, dissolving or refusing to dissolve a permanent or preliminary injunction rests in the sound discretion of the trial court upon a consideration of all the particular circumstances of each individual case" ' . . . [Citation.]" (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 849–850 [39 Cal.Rptr.2d 21, 890 P.2d 43].) "This standard applies to a grant or denial of a protective order under the DVPA. [Citation.]" (*Gonzalez v. Munoz, supra*, 156 Cal.App.4th at p. 420.)

Having reviewed the statutory framework governing restraining orders under the DVPA and the applicable standard of review, we turn to our analysis of the issues on appeal.

### B. *Sufficiency of the Application for a DVPA Restraining Order*

Darshana argues that the trial court erred in finding that her application and supporting declaration failed to allege abuse that is sufficient for the issuance of a restraining order under the DVPA. She asserts that the requisite abuse need not involve physical injury or assault, and the DVPA must be broadly

---

[8] Section 242 provides, "(a) Except as provided in subdivision (b), if an order described in Section 240 is issued, the matter shall be made returnable on an order requiring cause to be shown why a permanent order should not be granted, on the earliest day that the business of the court will permit, but not later than 20 days or, if good cause appears to the court, 25 days from the date of the order. [¶] (b) If a hearing is not held within the time provided in subdivision (a), the court may nonetheless hear the matter, but the order is unenforceable unless reissued under Section 245."

construed to authorize a restraining order where, as here, the application shows fear for the applicant's safety, due to the applicant's former spouse using information gained from accessing the applicant's private e-mail account, and in light of the former spouse's previous physical violence. Additionally, Darshana claims that "[h]ad she been able to be heard on the merits, the court would have heard testimony about how [Datta's] conduct harassed her, disturbed her peace, invaded her privacy, frightened her and intimidated her."

According to Datta, Darshana's showing was insufficient to warrant a finding of abuse within the meaning of the DVPA because she did not allege any contact by him and the "DVPA was not intended to include such vague allegations of embarrassment or access to alleged private email accounts." Our resolution of the issue is governed by the pertinent provisions of the DVPA and its legislative history.

■ To be facially sufficient under the DVPA, an application for a restraining order must allege abuse within the meaning of the DVPA. As noted above in part A, *ante*, the definition of "abuse" under the DVPA includes engaging "in any behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203, subd. (d).) Section 6320 provides in part that "[t]he court may issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members." (*Id.*, subd. (a).)

■ Thus, section 6320 provides that "the requisite abuse need not be actual infliction of physical injury or assault." (*Conness v. Satram* (2004) 122 Cal.App.4th 197, 202 [18 Cal.Rptr.3d 577].) To the contrary, section 6320 lists several types of nonviolent conduct that may constitute abuse within the meaning of the DVPA, including two types of conduct relevant to the present case.

First, section 6320 provides that contacting the other party "either directly or indirectly, by mail or otherwise" may constitute abuse. In the present case, Darshana stated in her declaration that Datta had told other persons that "he knew which social events I would be attending," which caused her to fear for her safety because he had physically abused her in the past. Assuming, without deciding, that Darshana's statements are true, Datta's alleged conduct of viewing Darshana's private e-mail, learning her social schedule, and

communicating this information to third persons who then told Darshana that Datta was aware of her schedule, could constitute indirect and threatening contact with Darshana, and thus abuse within the meaning of section 6320.

Second, section 6320 broadly provides that "disturbing the peace of the other party" constitutes abuse for purposes of the DVPA. The DVPA does not provide any definition for the phrase "disturbing the peace of the other party," and we therefore turn to the rules of statutory construction to determine the meaning of the phrase and whether Datta's conduct, as alleged by Darshana in her declaration, may constitute abuse within the meaning of the DVPA.

■ "In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.]" (*Estate of Griswold* (2001) 25 Cal.4th 904, 910–911 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) " 'We begin by examining the statutory language, giving the words their usual and ordinary meaning.' [Citations.] If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If there is ambiguity, however, we may then look to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such cases, we ' " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' [Citation.]" (*Id.* at p. 911.)

■ To determine the plain meaning of statutory language, we may resort to the dictionary. "When attempting to ascertain the ordinary, usual meaning of a word [in a statute], courts appropriately refer to the dictionary definition of that word." (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121–1122 [29 Cal.Rptr.3d 262, 112 P.3d 647].) The ordinary meaning of "disturb" is "[t]o agitate and destroy (quiet, peace, rest); to break up the quiet, tranquility, or rest (of a person, a country, etc.); to stir up, trouble, disquiet." (Oxford English Dictionary Online (2d ed. 1989) <http://www.oed.com> [as of Apr. 24, 2009].) "Peace," as a condition of the individual, is ordinarily defined as "freedom from anxiety, disturbance (emotional, mental or spiritual), or inner conflict; calm, tranquillity." (*Ibid.*)
■ Thus, the plain meaning of the phrase "disturbing the peace of the other party" in section 6320 may be properly understood as conduct that destroys the mental or emotional calm of the other party.

Our interpretation of the phrase "disturbing the peace of the other party" in section 6320 also comports with the legislative history of the DVPA. As enacted in 1993 (Stats. 1993, ch. 219, § 154, p. 1654), the DVPA collected

earlier provisions for the issuance of domestic violence restraining orders from the former Family Law Act (Civ. Code, former § 4359), the former Domestic Violence Prevention Act (Code Civ. Proc., former § 540 et seq.) and the Uniform Parentage Act (Civ. Code, former § 7020). (See Cal. Law Revision Com. com., 29F West's Ann. Fam. Code (2004 ed.) foll. § 6200, p. 675.) These provisions all expressly authorized a domestic violence restraining order that enjoined "disturbing the peace" of the other party. (See Mills & McNamar, *California's Response to Domestic Violence* (1981) 21 Santa Clara L.Rev. 1, 8; *In re Marriage of Van Hook* (1983) 147 Cal.App.3d 970, 979 [195 Cal.Rptr. 541]; *Review of Selected 1979 California Legislation* (1979) 11 Pacific L.J. 465.)

The 1979 Domestic Violence Prevention Act (Code Civ. Proc., former § 540 et seq.), like the current DVPA (Fam. Code, § 6200), had a "protective purpose" that was "broad both in its stated intent and its breadth of persons protected." (*Caldwell v. Coppola* (1990) 219 Cal.App.3d 859, 863 [268 Cal.Rptr. 453].) The 1979 act was intended to "provide more protective orders to a broader class of victims of domestic violence," and "specifically sets forth the orders which may be issued by the court. These orders will enable the court to provide greater relief to victims in more areas of need." (First Rep. of the Advisory Com. on Family Law to the Sen. Subcommittee on the Admin. of Justice, Domestic Violence (1978) p. 19.) Thus, as originally enacted, the DVPA reflected the Legislature's goal of reducing domestic violence and its recognition that "[i]t is virtually impossible for a statute to anticipate every circumstance or need of the persons whom it may be intended to protect. Therefore, the courts must be entrusted with authority to issue necessary orders suited to individual circumstances, with adequate assurances that both sides of the dispute will have an opportunity to be heard before the court." (First Rep. of the Advisory Com. on Family Law to the Sen. Subcommittee on the Admin. of Justice, Domestic Violence, *supra*, at pp. 18–19.)

■ Accordingly, we believe that the Legislature intended that the DVPA be broadly construed in order to accomplish the purpose of the DVPA. ■ Therefore, the plain meaning of the phrase "disturbing the peace" in section 6320 may include, as abuse within the meaning of the DVPA, a former husband's alleged conduct in destroying the mental or emotional calm of his former wife by accessing, reading and publicly disclosing her confidential e-mails.

■ In the present case, we determine that the allegations in Darshana's application and declaration are facially sufficient for a showing of abuse within the meaning of the DVPA. We assume, without deciding the truth of Darshana's allegations, that Datta's conduct included accessing, reading, and

publicly disclosing the content of Darshana's confidential e-mails, and that his conduct caused her to suffer "shock" and "embarrassment," to fear the destruction of her "business relationships," and to fear for her safety. In other words, Datta's conduct with respect to Darshana's e-mail account, as stated in her declaration, allegedly caused the destruction of her mental or emotional calm and could, if found to be true, constitute "disturbing the peace of the other party." (§ 6320.) Since "disturbing the peace of the other party" is a form of abuse within the meaning of the DVPA, we find that Darshana's application and supporting declaration are facially sufficient for a showing of abuse under the DVPA and require a hearing on the merits. Therefore, we will reverse the trial court's April 15, 2008 order dismissing the application.

Additionally, because the record reflects that the proceeding conducted by the trial court on March 5, 2008, was limited to the issue of the sufficiency of Darshana's application for a restraining order of longer duration, we also determine that Darshana is entitled to a hearing on the merits of her application, as discussed in part C, below.

### C. The Hearing on the Merits

Darshana contends that the trial court erred in failing to allow oral testimony by her witnesses at the March 5, 2008 proceeding on her application for a DVPA restraining order of longer duration. However, Darshana has not provided any authority for the proposition that a trial court is required to allow oral testimony at the hearing on application for a restraining order under the DVPA. Her reliance on *Nakamura, supra,* 156 Cal.App.4th 327 is misplaced. The *Nakamura* court ruled that the trial court may not summarily deny a facially sufficient application for a temporary DVPA restraining order without a hearing, and did not address the issue of witness testimony. (156 Cal.App.4th at p. 337.)[9]

We determine that the trial court was not required to allow oral testimony by Darshana's witnesses because the general rule is that "[t]he trial court is empowered to determine motions upon affidavits, and has the discretion to refuse oral testimony." (*Velez v. Smith* (2006) 142 Cal.App.4th 1154, 1160 [48 Cal.Rptr.3d 642]; see Cal. Rules of Court, rule 3.1306.) Because an order to show cause constitutes a notice of motion, a trial court may exercise its discretion, as it did here, by excluding oral testimony and denying "the [order to show cause] based on insufficiency of the application." (*In re Marriage of Hunt* (1985) 172 Cal.App.3d 872, 875 [218 Cal.Rptr. 451];

---

[9] In 2008, the Legislature added section 6320.5 (Stats. 2008, ch. 263, § 1) which provides in part that "An order denying a jurisdictionally adequate petition for an ex parte order, pursuant to Section 6320, shall provide the petitioner the right to a noticed hearing . . . ." (§ 6320.5, subd. (b).)

see *Reifler v. Superior Court* (1974) 39 Cal.App.3d 479, 483 [114 Cal.Rptr. 356]; but see *Ross v. Figueroa* (2006) 139 Cal.App.4th 856, 865 [43 Cal.Rptr.3d 289] [nothing in the Fam. Code suggests that the respondent in a DVPA proceeding may not challenge the issuance of a permanent restraining order through oral testimony at the hearing].)

In exercising its discretion to either allow or exclude oral testimony, however, the trial court should be guided by the constitutional principle that "[d]ue process guarantees ' "notice and opportunity for hearing *appropriate to the nature of the case.*" ' [Citation.]" (*In re Jesusa V.* (2004) 32 Cal.4th 588, 601 [10 Cal.Rptr.3d 205, 85 P.3d 2].) Moreover, the trial court should be mindful that "in light of the vulnerability of the targeted population (largely unrepresented women and their minor children), bench officers are 'necessarily expected to play a far more active role in developing the facts, before then making the decision whether or not to issue the requested permanent protective order.' [Citation.]" (*Gonzalez v. Munoz, supra,* 156 Cal.App.4th at p. 423.)

Finally, we agree with Darshana's contention that her application for a restraining order under the DVPA was entitled to calendar preference under section 244, which provides, with respect to temporary restraining orders governed by the Family Code, that "(a) On the day upon which the order is made returnable, the hearing shall take precedence over all other matters on the calendar of the day, except older matters of the same character, and matters to which special precedence may be given by law. [¶] (b) When the cause is at issue it shall be set for trial at the earliest possible date and shall take precedence over all other cases, except older matters of the same character, and matters to which special precedence may be given by law."

For these reasons, we will reverse the April 15, 2008 order dismissing Darshana's application for a restraining order and remand the matter for a hearing on the merits of the application, including a determination as to whether a restraining order should issue as requested by Darshana or whether the application should be denied as requested by Datta.

Having reached this conclusion, we need not address Darshana's remaining contentions on appeal, including her contention that a motion for judgment on the pleadings is not permitted in a proceeding under the DVPA pursuant to California Rules of Court, rule 5.108(a).[10]

---

[10] We also note that the issue of whether a motion for judgment on the pleadings may be brought in a DVPA proceeding is not properly before us because Datta's motion for judgment on the pleadings was not included in the record and it is unclear whether the motion was filed in the trial court.

## IV. DISPOSITION

The order of April 15, 2008, dismissing appellant Darshana Nadkarni's application for a restraining order under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.) is reversed. The trial court is directed to hold a hearing on the merits of the application and may, in the court's discretion, allow the presentation of additional evidence and oral testimony.

Mihara, J., and McAdams, J., concurred.