Filed 2/10/14  Marriage of Foladpour and Hashemi CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of FOROUD FOLADPOUR and MOHAMMAD HASHEMI. | |
| FOROUD FOLADPOUR,<br><br>    Appellant,<br><br>        v.<br><br>MOHAMMAD HASHEMI,<br><br>    Respondent. | G048102<br><br>(Super. Ct. No. 10D009881)<br><br>O P I N I O N |

        Appeal from an order of the Superior Court of Orange County, Theodore R. Howard, Judge.  Affirmed.

        Larry Herrera for Appellant.

        No appearance for Respondent.

Foroud Foladpour appeals from an order after the trial court issued a domestic violence restraining order in favor of her husband, Mohammad Hashemi, who she had been separated from for over two years. Foladpour argues insufficient evidence supports the restraining order.[1] We disagree and affirm the order.

FACTS

Hashemi and Foladpour were married in December 2007, and Foladpour initiated separation proceedings in October 2010. A stipulated judgment of legal separation was entered in March 2011.[2] Hashemi first moved to a different apartment in the same complex in Irvine and then to another apartment about one-half mile away in April 2011. In February 2012, Hashemi filed a petition for divorce.

A series of incidents that we describe in greater detail below led Hashemi to seek a temporary restraining order against Foladpour on January 18, 2013. The request for a temporary restraining order was supported by Hashemi's declaration and four exhibits. The trial court granted the order and set a hearing date of February 11, 2013. Foladpour was served with the temporary restraining order on January 29, 2012.

At the February 11, 2013, hearing, Hashemi testified concerning the following incidents. His testimony concerning the incidents were nearly identical to his statements in his declaration.

1. On December 15, 2012, about midnight, Hashemi went to the parking lot to move a female friend's car. As he walked back, he saw Foladpour driving her car in the parking lot. When she saw him, she stopped her car, they exchanged glances, and she drove away.

---

[1] Hashemi did not file a respondent's brief.

[2] In her declaration, Foladpour stated they separated instead of divorcing so she could remain on Hashemi's health insurance; she has breast cancer.

2. On December 19, 2012, about 11:00 p.m., Hashemi escorted a female friend from his apartment to her car and when he returned to his apartment he found a white envelope with a typed letter inside. He did not see the letter when he left his apartment. Exhibit A is the note that was left on his front porch. The note implored Hashemi to leave "her," do not talk to "her," and do not invite "her" to your apartment because she is evil and cannot be trusted. The note concluded, "I am not ready for any relatinship."[3]

3. On December 21, 2012, about 11:00 p.m., Hashemi and a female friend were at his residence when he heard footsteps on the stairs to his second floor apartment. He looked out the window and saw Foladpour walking away from the stairs towards the parking lot. He opened his front door and found a plastic bag with a plastic bottle and a "bunch of notes." Exhibit B is the note that was left on his front porch. Exhibit B referred to the woman as "suger momey" and asserted that if Hashemi "fack[ed]" her, he would get a disease because she is a prostitute.

4. On December 23, 2012, Hashemi went to move a female friend's car. When he opened the front door, he found a plastic bag with a bottle and a note. He found a note and cucumbers on his friend's car. Exhibit C was the note that was left on his front porch. Exhibit C stated, "suger momey" is evil and is blackmailing Hashemi. The note referred to Hashemi's friend as a "slave" and "monkey." It said, "[L]ate or sooner your suger momey will be cut suger momey can be cut easy." Finally, the note stated, "I will not fack her any more I got sexsual disease from her . You got it alrady." Exhibit D is the note that was left on the car. Exhibit D states, "Hey facker he still married, fack you, you are a hocker . You are not the good person you do not respect you your self . . . . . . . . . . . he still love he,s wife . fack you do you job only . . . . facker ."

---

[3]        We have provided exact quotations of the notes to give the reader their full flavor. We have not corrected typographical or grammar errors.

5. On January 31, 2013, after the temporary restraining order was served on Foladpour, Hashemi was at the bank when he saw Foladpour walk in. Hashemi left the bank and as he walked to his car, he noticed Foladpour's car parked next to his car. Hashemi called the police, and they arrested Foladpour.

Hashemi testified Foladpour would make harassing telephone calls to his residence. He denied seeing Foladpour at the gym since he obtained the temporary restraining order. Hashemi stated his female friend would not come to his residence anymore.

After Foladpour, acting in propria persona, cross-examined Hashemi, Hashemi's counsel questioned Foladpour pursuant to Evidence Code section 776. Foladpour testified she does not have any friends that live in Hashemi's apartment complex. She denied writing any of the notes Hashemi included as exhibits to support his request for a restraining order, although counsel questioned her concerning grammar similarities between her declaration and the notes. She denied seeing Hashemi's vehicle and denied seeing him in the bank until he walked out.

Foladpour testified on her own behalf. She denied being at Hashemi's apartment on any of the dates in question and claimed she was at the following holiday parties: on December 15, 2012, Foladpour was at a Christmas party in Laguna Beach with friends and did not return home until 2:00 a.m.; on December 19, 2012, Foladpour was at a Christmas boat party until after midnight; on December 21, 2012, Foladpour was at a Christmas party at the Embassy Suites Hotel in Costa Mesa; and on December 23, 2012, Foladpour was at a party.

On cross-examination, Foladpour admitted she did not have any evidence other than her testimony to prove she was at the parties. She would not reveal the names of any of the people who were at the parties with her.

The trial court granted the restraining order for three years. The court opined "there are significant problems with the credibility of [Foladpour] in the matter."

4

The court concluded Hashemi demonstrated by a preponderance of the evidence he was a victim of domestic violence. The court added that based on the exhibits and the testimony "[Foladpour's] stories simply are not credible." Foladpour appealed.

DISCUSSION

Pursuant to Family Code section 6300, a domestic violence restraining order may be issued if an affidavit shows reasonable proof based on a preponderance of the evidence past act(s) of abuse. (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137 (*Gdowski*).) Family Code section 6203 provides: "'[A]buse' means any of the following: [¶] (a) Intentionally or recklessly to cause or attempt to cause bodily injury. [¶] (b) Sexual assault. [¶] (c) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another. [¶] (d) To engage in any behavior that has been or could be enjoined pursuant to [Family Code] [s]ection 6320."

The behavior that may be enjoined under Family Code section 6320, subdivision (a), includes the following: "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in [s]ection 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party." The actual infliction of physical injury or assault is not required for a finding of abuse. (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1496-1497 [reading and publicly disclosing e-mails]; *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290-1291 [persistent unwanted telephone calls or letters].)

"'A grant or denial of injunctive relief is generally reviewed for abuse of discretion. [Citation.] This standard applies to a grant or denial of a protective order under the DVPA [Domestic Violence Protection Act]. [Citation.]' [Citation.] However, '[j]udicial discretion to grant or deny an application for a protective order is not unfettered. The scope of discretion always resides in the particular law being applied by

5

the court, i.e., in the "'legal principles governing the subject of [the] action . . . .'" [Citations.]" (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264-1265.)

Here, the trial court did not abuse its discretion in granting Hashemi's three-year restraining order against Foladpour. Preliminarily, Foladpour asserts that because she and Hashemi live in the same apartment complex, it is inevitable they would see each other. As support for this contention she cites to paragraph 4 of Hashemi's declaration where he states that after they separated, he moved to another apartment in the same complex. But paragraph 5 states that in April 2011, Hashemi moved to another apartment on a different street about one-half mile away. Additionally, Foladpour herself testified she does not have any friends that live in Hashemi's apartment complex. Based on this evidence, the trial court could reasonably conclude Foladpour and Hashemi live in different apartment complexes, and Foladpour's presence in Hashemi's apartment complex was not by chance.

As to the merits, there was evidence from which the trial court could reasonably conclude Foladpour harassed and improperly contacted Hashemi by letter and telephone. The evidence established that on three occasions Foladpour delivered to Hashemi's apartment notes that warned him to stay away from his female friend. The tone of the notes grew more aggressive over time. The first note warned Hashemi to stay away from his female friend, the second note stated his female friend was a "suger momey" who would transmit sexual diseases, and the third note included what appeared to be racial epithets and accused the female friend of blackmailing Hashemi. The fourth note, the note left on his female friend's car, included language that one could reasonably conclude threatened violence against the female friend. On one of the occasions, December 21, 2012, Hashemi saw Foladpour walk away from his apartment immediately before he found a note on his front porch. Additionally, there was evidence that the unique grammar included in the notes matched the grammar included in Foladpour's declaration. Finally, Hashemi testified he received harassing telephone calls from

6

Foladpour, who tried to disguise her voice. Contrary to Foladpour's assertion otherwise, this evidence constitutes more than speculation and conjecture. Instead it demonstrates a pattern of harassment and threats.

Finally, Foladpour's refusal to provide the names of any of the people at any of the holiday parties she attended undermines her credibility and calls into question the veracity of her testimony. Foladpour claimed she went to the bank but did not know Hashemi was there until he was walking out. Yet Hashemi testified Foladpour walked towards him in the bank and when he left, he noticed she had parked her car next to his car. Thus, the trial court did not abuse its discretion in finding Foldapour was not credible and granting Hashemi's three-year restraining order against Foladpour.

## DISPOSITION

The order is affirmed. As there has been no appearance for Respondent, no costs will be awarded.

O'LEARY, P. J.

WE CONCUR:

FYBEL, J.

THOMPSON, J.

7