Filed 12/19/16 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of GENISE and DONN MICHAEL SCHU, JR. | 2d Civil No. B269831 (Super. Ct. No. 1342880) (Santa Barbara County) |
| GENISE J. GOMEZ,     Appellant, v. DONN MICHAEL SCHU, JR.,     Respondent. | ORDER MODIFYING OPINION [No Change in Judgment] |

THE COURT:

It is ordered that the opinion filed herein on December 6, 2016, be modified as follows:

1.  On page 1, the paragraph is deleted and the following paragraph is inserted in its place:

     California's so called "No Fault Divorce" law does not require a trial court to ignore evidence of fault when the spouse seeking support is guilty of domestic violence.  Here, the court denied Gomez support pursuant to Family Code section 4320, subdivisions (i), (m), (n), and (k).[1]  We affirm.

2.   On page 1, footnote 1, the words "unless otherwise stated" are deleted so that the footnote reads:

All statutory references are to the Family Code.

3.   On page 2, the first paragraph is deleted and the following paragraph is inserted in its place:

Donn Michael Schu and Genise Gomez married in 1986.  They have three adult children:  Aaron, Ashley and Evan.  Gomez stopped working when Ashley was born in 1990.  Schu works in the oil industry.  He now earns at least as much as he did at the time of the parties' separation.  He has the ability to pay whatever spousal support the trial court may order.  Schu has been paying Gomez $500 per month temporary spousal support.

4.   On page 2, second paragraph, second sentence, the word "rotate" is changed to "alternate" so that the sentence reads:

He would alternate between spending 28 days in Algeria and 28 days at home.

5.   On page 2, third paragraph, second sentence, the word "while" is changed to "when" and the word "still" is deleted so that the sentence reads:

Gomez became sexually attracted to S. when he was a child.

6.   On page 2, sixth paragraph, first sentence, the word "affair" is changed to "sexual relationship" so that the sentence reads:

Gomez's children did not know about her sexual relationship with S., but they had suspicions.

7. On page 3, the first full paragraph, first sentence, the word "affair" is changed to "relationship" so that the sentence reads:

> Gomez was concerned that news of the relationship was getting out on social media.

8. On page 3, second full paragraph, the first two sentences are combined, so the sentence reads:

> Due to the situation at home, Ashley felt she was in trouble emotionally and began to cut herself.

9. On page 4, sixth paragraph, second sentence, after the word "mandatory," add the words "in every case" so that the sentence reads:

> Spousal support is not mandatory in every case.

10. On page 6, the first full paragraph, first sentence, after "section 2335," add "and" so the sentence reads:

> Gomez complains the court allowed Schu to present evidence of misconduct in violation of section 2335 and then treated the parties' reaction to the misconduct as evidence of domestic violence.

11. On page 7, first full paragraph, insert a period and a quotation mark at end of paragraph.

There is no change in the judgment.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of GENISE and DONN MICHAEL SCHU, JR. | 2d Civil No. B269831 (Super. Ct. No. 1342880) (Santa Barbara County) |
| GENISE J. GOMEZ, Appellant, v. DONN MICHAEL SCHU, JR., Respondent. | |

California's so called "No Fault Divorce" law does not require a court to ignore evidence of fault when deciding spousal support. This is especially the case when the spouse seeking support is guilty of domestic violence. The trial court denied Gomez support under Family Code section 4320, subdivisions (i), (m), (n), and (k)[1]. We affirm.

---

[1] All statutory references are to the Family Code unless otherwise stated.

FACTS

Donn Michael Schu and Genise Gomez were married in 1986.  They have three adult children, Aaron, Ashley and Evan.  Gomez stopped working when Ashley was born in 1990.  Schu works in the oil industry.  He earns at least as much as he did at the time of the parties' separation.  He has the ability to pay whatever spousal support the court may order.  Schu has been paying Gomez $500 per month temporary spousal support.

Between 1995 and 2001, Schu worked in Algeria.  He would rotate between spending 28 days in Algeria and 28 days at home.

S. was Aaron's best friend and the brother of Ashley's best friend.  Gomez became sexually attracted to S. while he was still a child.

On the weekends, underage children, including S., would gather at the parties' home.  Gomez would provide alcohol.  Aaron and his friends would sometimes drink to the point of vomiting.  Gomez created a sexual atmosphere in her home.  She showed pornographic movies to Aaron and his friends.  Gomez sometimes watched pornography with S. alone.  Aaron began having sex with underage girls in the home.

Gomez began having oral sex with S. when he was 12 years old.  It progressed to intercourse and lasted until S. was in college.  They would have sex on the weekends.  It happened mostly in Gomez's home and sometimes in a car.  S. tried to end the relationship, but Gomez threatened to tell his friends and family.  S. would plead and cry, but Gomez insisted on continuing the relationship.

Gomez's children did not know about her affair with S., but they had suspicions.  One day Ashley came home unexpectedly.  She saw S. dressed only in a towel and her mother in the shower.  Aaron became concerned about his mother and S.

2

being in the bedroom with the door locked. Evan wondered why S. was at their house without Aaron.

Gomez was concerned that news of the affair was getting out on social media. She demanded that Ashley provide her with S.'s sister's social media password. When Ashley refused, Gomez told Aaron to hold Ashley down while Gomez cut off "a big chunk" of her hair. Ashley's hair, which had hung down to her lower back, was now at throat level. Ashley found it humiliating to go to school with her hair cut.

Due to the situation at home, Ashley felt she was in trouble emotionally. She had begun to cut herself. She asked Gomez to send her to a counselor. Gomez told her that if she went to a counselor, they would take her away. Ashley understood that to mean "don't talk about what's going on at home."

Ashley testified she does not plan to have children. She would not want her children to go through what she went through. She fears she will become like her mother. Her friends call her "mannequin" because she never has emotions or says how she feels.

Gomez pled no contest to seven counts of unlawful sexual conduct with a minor. She was sentenced to six years in prison.

*Finances*

The trial court found Gomez has sufficient assets to support herself. The court dissolved the parties' marriage in July 2012. Gomez received about $914,000 in assets. The assets include half of Schu's retirement, valued at $650,000. Gomez will incur penalties if she withdraws the retirement funds before she is 59 1/2. In addition to $160,000 Gomez has of her own, she is listed on five or six bank accounts with her father. One of the accounts had approximately $200,000 in it.

3

Susan Miller, a vocational examiner, testified that Gomez could work as an event planner. Gomez told Miller that she "would be all right no matter what."

DISCUSSION

I

Gomez contends the trial court abused its discretion in allowing Schu to introduce evidence of fault and by using that evidence to deny support.

Gomez relies on section 2335. The section provides: "Except as otherwise provided by statute, in a pleading or proceeding for dissolution of marriage or legal separation of the parties, including depositions and discovery proceedings, evidence of specific acts of misconduct is improper and inadmissible."

Dissolution of marriage may be "no fault." But there is an element of fault in the award of spousal support. (See 1 Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2016) ¶ 6:824, p. 6-417 ["Notwithstanding the 'no fault' mandate, probative evidence 'in the nature of fault' often comes up in contested spousal support cases."].)

Gomez ignores the first phrase of section 2335, "Except as otherwise provided by statute . . . ." Section 4320 governs the award of spousal support.

Section 4320, subdivision (a) provides that the court "may" order spousal support. Spousal support is not mandatory. The facts and equities in a particular case may call for no spousal support or very short-term support. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480-481.) Section 4320 provides that the court "*shall* consider *all* of the following circumstances: . . ." [Italics added.] One of those circumstances is domestic violence.

Section 4320, subdivision (i) provides: "Documented evidence, including a plea of nolo contendere, of any history of

4

domestic violence, as defined in Section 6211, between the parties or perpetuated by either party against either party's child, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party."

Section 6211 defines "'[d]omestic violence'" as "abuse perpetuated against . . . (e) a child of a party . . . ."

Gomez's conduct in providing her son with alcohol to the extent he drank himself sick and forcibly cutting her daughter's hair qualifies as "domestic violence" by any reasonable definition of the term. But the trial court went farther. It applied the definition of "abuse" found in section 6203 to its finding of domestic violence. Section 6203 is part of the Domestic Violence Prevention Act. (DVPA; § 6200, et. seq.)

Section 6203, subdivision (a) provides in part "For purposes of this act, 'abuse' means any of the following: . . . (4) To engage in any behavior that has been or could be enjoined pursuant to section 6320." Among the behaviors listed in section 6320 is "disturbing the peace of the other party." The trial court relied on *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483 for the meaning of disturbing the peace. In *Nadkarni* the court said disturbing the peace of the other party means "conduct that destroys the mental or emotional calm of the other party." (*Id.* at p. 1497.) The trial court concluded that section 4320, subdivision (i) applies because Schu and the children had been subject to emotional abuse for years.

Gomez argues that the definition of domestic violence adopted by the trial court is too broad. Gomez claims that under the court's approach, having an extramarital affair, or refusing to help around the house, or buying too many shoes or refusing to

5

engage in sex could be considered domestic violence. These quotidian examples pale in comparison to what happened here. Gomez physically and emotionally abused her children to facilitate molesting a child.

Gomez complains the court allowed Schu to present evidence of misconduct in violation of section 2335 then treated the parties' reaction to the misconduct as evidence of domestic violence. This, Gomez argues, is circular reasoning.

But section 4320, subdivision (i) mandates that the trial court consider domestic violence. To fulfill this requirement, the court must allow evidence of misconduct. There is no conflict with section 2335, because that section begins, "Except as otherwise provided by statute . . . ."

In addition, as a separate and independent ground, the trial court relied on section 4320, subdivision (n) which requires the trial court to consider "[a]ny other factors the court determines are just and equitable." Gomez argues that we should read the subdivision as containing an exception for the fault of a party. But the subdivision contains no such exception.

We need not consider here what role the fault of a party may have on the award of spousal support in the ordinary case. This is far from the ordinary case. Here, in order to molest S., Gomez provided her son and other children with alcohol and pornography, and assaulted her daughter. When Gomez's daughter tried to obtain help for the psychological damage Gomez caused, Gomez threatened her daughter with the warning she would be removed from her home. In addition, Gomez's children's testimony made it clear that their sense of humiliation and betrayal caused by Gomez's arrest and conviction was psychologically devastating. Finally, the harm Gomez caused to S. and his family cannot be calculated. In this case the trial court

6

was more than justified in denying Gomez spousal support under Section 4320, subdivision (n).

The trial court also took into account the "balance of the hardships to each party." (§ 4320, subd. (k).) Gomez had assets of her own, including $160,000 and five or six bank accounts she holds with her father. By Gomez's own admission, she "would be all right no matter what

Gomez claims it is speculation that she has any interest in the bank accounts she holds with her father. But it is not speculation. It is reasonable to conclude that a person whose name is on a bank account has a beneficial interest in that account.[2]

## DISPOSITION

The judgment (order) is affirmed. Costs are awarded to respondent.

<u>CERTIFIED FOR PUBLICATION.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

---

[2] Because section 4320, subdivisions (n) and (k) are a sufficient basis for denying support, we need not consider subdivision (m).

Colleen K. Stern, Judge

Superior Court County of Santa Barbara

————————————————

Griffith & Thornburgh and Bruce D. Glesby; Ferguson Case Orr Paterson and Wendy C. Lascher for Appellant.

Law Offices of Ralph B. Wegis, Ralph B. Wegis, Barry E. Rosenberg and Edward Gordon; Wilson & Pettine and Paul Pettine, III for Respondent.