Filed 1/12/22  Tronson v. Ortiz CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| FIONA TRONSON,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RUBEN ORTIZ, JR.,<br><br>        Defendant and Appellant. | B307881<br><br>(Los Angeles County<br>Super. Ct. No. 20CHRO00563) |

APPEAL from an order of the Superior Court of Los Angeles County, Michelle S. Short, Judge.  Affirmed.

David D. Diamond for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

* * * * * *

Ruben Ortiz, Jr. (Ortiz), appeals from a domestic violence restraining order (DVRO) issued against him, after a contested hearing, for the protection of Fiona Tronson (Tronson), her mother Alicia Tronson, her father Steve Tronson, and her brother Pierre Tronson,[1] all of whom reside in the same household. We find no error and therefore affirm the order.

## BACKGROUND

Ortiz and Tronson are former coworkers who had a dating relationship that ended in November 2018. For a few months after the relationship ended, Ortiz repeatedly called Tronson. Ortiz told Tronson he was going to kill himself and that she needed to give him another chance. Tronson eventually stopped talking to Ortiz and blocked his calls. When Ortiz could no longer reach Tronson, he attempted to call from another number or sent her e-mails.

In May 2019, Tronson met a man who obtained her phone number. Tronson declined the man's subsequent attempt to meet with her again and told Ortiz about the incident. Shortly thereafter, Tronson began receiving threatening messages from an unidentified stalker. The stalker possessed private information about Tronson not available to her friends or to the general public. Tronson began to suspect that Ortiz was the stalker. She changed her telephone number and the harassing messages ceased. When Ortiz persuaded Tronson to give him her new phone number, the harassing messages resumed.

---

[1] Because respondent and her family members share the same surname, we refer to the family members by their first names to avoid confusion.

Tronson testified that she received an e-mail purporting to be from Corrective Skincare, where Tronson had previously applied for employment. The e-mail inquired whether Tronson was still interested in a job and asked her to update her contact information, including her phone number. Tronson testified that no one besides Ortiz and her parents knew that she had previously applied for employment at Corrective Skincare. Tronson later confirmed that the e-mail had not been sent by Corrective Skincare, but by an imposter.

Tronson further testified that in July 2019, she and a friend were alone at Tronson's home when Ortiz texted Tronson asking, "Are you home?" Tronson replied "no." But Ortiz texted back stating, "you're lying." Ortiz then arrived at Tronson's home unannounced and uninvited. He opened an outdoor gate and let himself into the backyard. When Tronson went outside to confront him, Ortiz claimed he had seen a man in the backyard and inside the house and was concerned for Tronson's safety.

In May 2020, Tronson received a purchase order in an online clothing retail business that she operated. Tronson became suspicious when the purchaser asked strange questions and specified a delivery address that was nearby her home. Tronson contacted Ortiz's brother, who confirmed that the delivery address was the home of Ortiz's aunt.

Tronson's father Steve testified that between May 2019 and May 2020, 30 to 40 strange men appeared unannounced at the family home. Many of the men asked for Tronson by name. Some claimed to be there to fix appliances, others inquired about purchasing motorcycle parts or cameras. One of the men said he had been sent by someone named "Ruben," and another admitted that Tronson's boyfriend or ex-boyfriend had sent him. Steve

3

testified that he feared for his own safety and for the safety of his family members living in the home.

Steve further testified that Tronson's mother, Alicia, received 80 or more harassing Facebook or text messages. One message included a photo of a gun and a threat to rape and murder Tronson. Steve believed the messages were from Ortiz because Ortiz had access to both Tronson's and Alicia's phone numbers.

Ortiz testified that within the last year, his financial accounts, including his bank account, Amazon account, and Paypal accounts had all been hacked, and that he began receiving harassing text messages demanding money. He admitted sending certain text messages to Tronson and to Tronson's mother.

Ortiz also admitted entering Tronson's property in July 2019. He claimed that he did so because he received a text message from someone threatening to harm Tronson. Ortiz also testified, however, that he believed Tronson was lying about the existence of a stalker.

The trial court received into evidence without objection Tronson's application for a restraining order and attached exhibits.[2] The court also received into evidence without objection a police report, a series of messages from Tronson's stalker, and various social media or text messages sent to Tronson's mother.

The trial court found that Tronson met her burden of establishing that Ortiz had committed acts of domestic violence. The court found significant the fact that two e-mails Ortiz

---

[2]     Including the petition, which included among others, her 18-year-old brother as a resident of the family home.

admitting sending to Tronson were identical in font, size, and display to the fraudulent e-mail alleged to be from Corrective Skincare.  The trial court further noted that Ortiz's testimony was inconsistent and lacked credibility.

On August 6, 2020, the trial court issued a restraining order against Ortiz for a period of five years.  The court included as protected parties Tronson, Steve, Alicia, and Pierre.  The trial court further ordered Ortiz to stay away from Tronson's pet dog and cat.

This appeal followed.

## DISCUSSION

### I.    Applicable law and standards of review

The Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.; DVPA) authorizes a trial court "'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved'" if evidence shows "'reasonable proof of a past act or acts of abuse.'" (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1424 (*Evilsizor*).)  Family Code section 6320 broadly provides that "disturbing the peace of the other party" constitutes abuse for the purposes of the DVPA.  (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497 (*Nadkarni*).)

We review a trial court's factual findings under Family Code section 6320 for substantial evidence.  (*J.J. v. M.F.* (2014) 223 Cal.App.4th 968, 975.)  Under this standard, we inquire "'whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted,' supporting the court's finding." (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822.)  "'We must accept as true all evidence . . . tending to establish the

5

correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment.'" (*Id*. at p. 823.)

An order granting a protective order under the DVPA is reviewed for abuse of discretion. (*Evilsizor, supra,* 237 Cal.App.4th at p. 1424.) This is because the grant of a protective order "'"'rests in the sound discretion of the trial court upon a consideration of all the particular circumstances of each individual case.'"'" (*Nadkarni, supra*, 173 Cal.App.4th at p. 1495.)

## II. Substantial evidence supports issuance of the DVRO

### A. *Evidence that Ortiz engaged in abuse*

Ortiz contends there was insufficient evidence that he was responsible for the abusive conduct that led to the trial court's issuance of the DVRO. There is substantial evidence in the record that Ortiz was the culpable party.

Ortiz admitted appearing unannounced and uninvited at Tronson's home in July 2019. Although Ortiz claimed he went to the home because he feared for Tronson's safety, he also testified that he disbelieved Tronson's reports of being harassed by a stalker. Tronson's testimony that shortly before Ortiz arrived she had texted him stating that she was not at home further undermined Ortiz's credibility.

There was evidence that Ortiz had access to both Tronson's and Alicia's phone numbers, and threatening messages were sent to both their phones. The threatening messages stopped when Tronson and Alicia changed their phone numbers. The harassing messages resumed only after Ortiz persuaded Tronson to disclose to him her new phone number.

There was also evidence that the scores of strange men who appeared uninvited at Tronson's home did so at Ortiz's direction.

One of the men admitted being sent by Tronson's ex-boyfriend, and another said he was sent by "Ruben." Finally, the trial court found a striking similarity in font, style, and display between e-mails Ortiz admitted sending to Tronson and the fraudulent e-mail Tronson received from Corrective Skincare requesting her current contact information.

Substantial evidence supports the trial court's finding that Ortiz engaged in abusive conduct.

### B. *Duration of DVRO*

Ortiz challenges the five-year duration of the DVRO and claims that it is excessive. In setting the duration of the DVRO, the trial court considered the period of time during which the abusive conduct occurred—late 2018 to May 2020. The court also weighed the content of the harassing messages, many of which threatened violence against Tronson or her mother. The record discloses no abuse of discretion.

### C. *Protected parties*

Ortiz contends there was no evidence to warrant including Tronson's brother Pierre or Tronson's pets in the protective order. Family Code section 6320, subdivision (a) allows "in the discretion of the court" inclusion of other named family or household members "on a showing of good cause." Family Code section 6320, subdivision (b) similarly allows the court "on a showing of good cause" to order a respondent to stay away from "any animal owned, possessed, leased, kept, or held" by the petitioner.

Substantial evidence supports inclusion of Tronson's pets and Pierre in the order. There was evidence that Ortiz appeared at Tronson's home unannounced and uninvited and that he opened a gate and made an unauthorized entry into the

7

backyard. There was also evidence that Ortiz caused between 30 and 40 strange men to appear at the home asking for Tronson. Finally, there was evidence that Ortiz sent multiple messages threatening to appear at the home to do harm to Tronson and her mother. Tronson's pets and Pierre reside in the home. The trial court did not abuse its discretion by including them in the DVRO.

## DISPOSITION

The August 6, 2020 DVRO against Ortiz is affirmed.


_____
CHAVEZ, J.

We concur:


_____
ASHMANN-GERST, Acting P. J.


_____
HOFFSTADT, J.