Filed 2/29/16  S.K. v. E.L. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Mono)

----

S.K.,

Appellant,

v.

E.L.,

Respondent.

C074407 and C076695

(Super. Ct. No. FL121020)

S.K. (father) appeals from a child custody judgment and also from a postjudgment move-away order permitting E.L. (mother) to move back to her native Ireland with their child A.K.  We consolidated father's appeals.

Father contends (1) the trial court abused its discretion in allowing the child to move to Ireland, because the move is not in the best interests of the child, and

(2) the standards for international child relocation weigh against the child's relocation to Ireland.[1]

We conclude the trial court did not abuse its discretion in determining that moving the child to Ireland was in the best interests of the child. It applied the proper analysis for permitting the child's international relocation and sought to ensure enforcement of its custody and visitation orders. The standards for international child relocation did not weigh against the child's relocation to Ireland.

We will affirm the child custody judgment and postjudgment move-away order.

BACKGROUND

Father is a citizen of the United States who grew up in New Hampshire. Mother is a joint citizen of the United States and the Republic of Ireland who grew up in Ireland. When they met in Massachusetts in 1998, both held graduate degrees and father had a six-figure income. Mother moved to Ireland in 1999 to attend an Irish medical school; father followed and obtained a job in Ireland with an American software manufacturer. Although mother subsequently left medical school without a medical degree, she received a significant personal injury settlement that allowed the couple to travel the world.

From 2003 to 2006, mother and father lived in Florida, and from 2006 to 2010 they made their home in Europe, although they traveled extensively. Mother became pregnant while they were living in Europe and they moved to Massachusetts so the baby could be born there.

In the words of the trial court, "Unfortunately, [the] blessed event led to an irreparable breakdown in the parents' relationship." Before the birth, the plan had been

---

[1] In her respondent's brief, mother argues, among other things, that the judgment should be affirmed because father failed to provide an adequate record on appeal, and father forfeited any argument regarding sufficiency of the evidence because he failed to set forth the material evidence in his brief. We will address the merits of father's contentions on appeal.

2

to live part-time in Europe and part-time in the United States. The couple owned a home in Montenegro and a condominium in Mammoth Lakes, California. The family moved to Mammoth Lakes in the summer of 2011, when the baby was two months old. Over the next six months, they traveled together in Ireland, Montenegro, Southern California and New England.

In February 2012, however, mother took the child to Ireland and father reported it in California as an abduction. The trial court assumed jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, Family Code section 3400 et seq., and determined that the United States was the child's state of habitual residence under the International Child Abduction Remedies Act (42 U.S.C. § 11601 et seq). In a subsequent telephone hearing, the trial court ordered mother to return with the child. Mother returned, observing that father was making good on his threat to "drag [her] through hell and back" if she tried to leave him. The trial court ultimately found the parties remained in regular contact throughout mother's stay in Ireland and there had been no abduction.

Father petitioned for sole legal and physical custody of the child subject to "reasonable supervised visitation" by mother but he alternatively proposed a 50/50 custody split with an order preventing mother from taking the child out of Mono County. The trial court noted that father's custody proposal included a "doomsday" clause providing that if either parent took the child on a vacation longer than two weeks, that parent would never be allowed to visit the child again. The trial court said father did not explain how that would be in the child's best interests. From the outset, mother wanted to return to Ireland to live there with her parents, but she proposed having father either move to Ireland or stay behind with three- to five-week visits four times each year and video-conferencing several times each week. A child custody specialist appointed by the trial court evaluated the parents and found them both capable of effective parenting. He recommended a 60/40 custody split in California but conceded that a 90/10 custody split would work if mother moved to Ireland.

3

The custody proceedings were exhaustive and acrimonious. After six months addressing various preliminary issues, the trial court heard evidence from the parties and several other witnesses about the best interests of the child. The trial court ordered additional briefing on international relocation issues and then allowed additional testimony. The trial court ultimately recounted and analyzed the evidence in a 91-page child custody judgment.

In the judgment, the trial court determined the only tie the family had to California was father's desire to snowboard in its mountains. Mother had been present in California only 118 days before father filed his petition for custody. The trial court assumed jurisdiction in part because no other forum could be called the parties' home state. Mother was anxious to get back to Ireland to care for a parent suffering from cancer and could not go without the child because he was still breast-feeding. The trial court awarded joint legal custody to the parents and primary physical custody to mother, but it prohibited mother from taking the child to Ireland until she satisfied certain conditions.[2] A follow-up hearing was delayed while the parties litigated in Ireland.

Because mother planned to live in Ireland and father in California, the trial court held a hearing on whether to issue a postjudgment move-away order. The hearing

---

[2] Among other things, the trial court ordered mother to do the following: (a) formally stipulate that California courts would have exclusive jurisdiction and authority to modify the order until a California court terminates it; (b) register the order with appropriate authorities in Ireland under the Hague Convention; (c) file the order in the appropriate court in Ireland as a "mirror" order; (d) post a surety bond in the amount of $100,000 or deposit and maintain the sum of $15,000 in an escrow account or court trust account, subject to forfeiture if mother attempted to thwart the court's jurisdiction; (e) retain legal counsel in Ireland to assist father in obtaining a legal guardianship for the child and to consent to it; (f) consent, stipulate and agree that a violation of the conditions and order would be deemed a substantial change of circumstances and detrimental to the child's best interests; and (g) agree to forfeit her interest in real estate jointly held by the parties in Florida and California if the court determined she refused to cure a violation of the orders within a reasonable time.

focused on international custody and visitation issues, especially on the enforceability of the trial court's orders. The trial court considered the impact of three orders issued by Irish courts. The trial court summarized the Irish orders as mirroring its own orders ensuring father's frequent and continuing contact with the child but falling short of guaranteeing perpetual exclusive jurisdiction in California. Mother agreed under oath that she would be subject to sanctions if she interfered with father's visitation rights, including forfeiture of her interest in American real estate and being subject to extradition and international kidnapping charges. The trial court was satisfied that mother had met the requirements set out in the child custody judgment.

The trial court's postjudgment move-away order allowed mother to take the child to Ireland and included detailed arrangements for father's communication and visitation with the child. Additional facts are included in the discussion *post*.

DISCUSSION

I

Father contends the trial court abused its discretion in allowing the child to move to Ireland, because the move is not in the best interests of the child.

"What constitutes the best interest of a child presents an inherently factual issue." (*Guardianship of A.L.* (2014) 228 Cal.App.4th 257, 268.) In making initial custody determinations, a trial court has wide discretion to fashion a parenting plan in the best interests of the child, including consideration of a planned relocation of the custodial parent and child. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31.) We must uphold a trial court's custody plan if the trial court could have reasonably concluded that its order advanced the child's best interest. (*Ibid*.)

The trial court found joint physical custody was not in the child's best interest because father engaged in multiple acts of nonviolent abuse toward mother. Father does not challenge the factual or legal bases for these findings, so we will not detail them

5

here.**3** The trial court also weighed evidence of father's claims of misconduct against mother and ordered her to attend counseling for a year to address her lack of empathy for the child's need for a relationship with his father and also the "anxiety and mood" issues attributed to her by father and his family.

The trial court went on to evaluate mother's request for a move-away order, appropriately beginning with the presumption that the requesting parent would relocate. (See *Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1127 [describing basis of presumption].) A custodial parent has the right to move with a child subject only to a court's intervention to prevent prejudice to the rights or welfare of the child. (Fam. Code § 7501.) An objecting noncustodial parent has the burden of proving that a planned relocation is detrimental to the child. (*In re Marriage of Lasich* (2002) 99 Cal.App.4th 702, 720.) The trial court recounted the move-away factors identified in *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, including the best interests of the child, the child's need for continuity and stability in relationships, the extent of current shared custody, the impact on the child of relocation, the history of conflict between the parents, the parents' predicted ability to facilitate continued contact, the ability of the parents to put the child's needs ahead of their own, the age of the child, the child's ties to any community or location, and the reason for the proposed move. The trial court then applied each factor to the evidence in a nine-page detailed analysis. Among other things, the trial court found that removing the child from mother would be extremely detrimental to him, that the child had no close relationship to other adults or children in Mammoth Lakes but did

---

**3** Abuse includes any behavior that could be enjoined under the Domestic Violence Prevention Act (DVPA). (Fam. Code §§ 6203, 6320.) The court evaluated the evidence against the statutory standards, citing *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483. Although the abuse was "situational" and not directed at the child, the trial court found father had not rebutted the statutory presumption against awarding physical custody to a recently-abusive parent (Fam. Code § 3044) and ordered father to complete a 52-week treatment program before the trial court would consider joint physical custody.

have relationships with extended family in Ireland, and the distance between California and Ireland did not create an insurmountable barrier because the parents were seasoned international travelers, had assets, lived frugally and had the potential to earn substantial income. The trial court concluded it was in the child's best interest to accompany his mother to Ireland.

Our deferential review is limited to assessing whether the trial court reasonably could have concluded that its order advanced the best interests of the child. (*In re Marriage of LaMusga*, *supra*, 32 Cal.4th at p. 1087.) The trial court's lengthy and carefully-crafted child custody judgment and postjudgment move-away order demonstrate a focus on the child's best interests.

The trial court did not abuse its discretion in concluding that moving the child to Ireland was in the best interests of the child.

II

Father also contends the standards for international child relocation weigh against the child's relocation to Ireland.

The parties agree that a seminal case for evaluating a custodial parent's move to another country is *In re Marriage of Condon* (1998) 62 Cal.App.4th 533 (*Condon*). In *Condon*, a native Australian married an American and they had two sons. (*Id.* at p. 536.) After the family lived in California for several years, the marriage ended and the mother wanted to take the children back to Australia. (*Ibid.*) The California Supreme Court had declared that a custodial parent has a presumptive right "to change the residence of minor children, so long as the removal would not be prejudicial to their rights or welfare." (*Id.* at p. 542-543, citing *In re Marriage of Burgess, supra*, 13 Cal.4th at p. 32.) The Court of Appeal in *Condon* exhaustively discussed cases from other jurisdictions, identifying in them three common concerns peculiar to the relocation of a custodial parent to another country. (*Id.* at p. 543-546.) It held that an international move-away order must consider (1) cultural problems (such as moving a female child to a country practicing genital

7

mutilation or a teenager to a country where the language is unfamiliar); (2) distance problems (such as expense and jet lag); and (3) jurisdictional problems, particularly the enforceability of American custody and visitation orders. (*Id*. at 546-547.) Factual findings made in the context of an international move-away order must be accorded great deference by a reviewing court. (*Id*. at p. 549.)

Here, the trial court found there is no evidence the child will suffer detriment from cultural differences if he lives in Ireland. Father nevertheless asserts that the trial court overlooked the child's "right to be raised and educated in the country in which he was born." But father cites no authority for such a right and he points to no evidence that the trial court overlooked. Father also noted that the predominant religion in Ireland is Catholicism and under Irish law an unmarried father has no right to the care or custody of his children. It may or may not be true that unmarried noncustodial parents face more challenges in Ireland than in the United States, but the focus of *Condon* is on the impact of a move on the child, not its parents. (*Condon, supra*, at p. 546.) Moreover, mother made a good faith effort to help father pursue formal guardianship in Ireland. And the Irish High Court formally granted custody of the child to mother and father jointly and issued orders to assure father's visitation rights would be honored in both countries. Father has not identified significant cultural problems that will impact the child.

The trial court also addressed the distance problem in detail. Father finds fault with one of the trial court's conclusions, that father could pay for travel by drawing against assets until his income increases. Father claims there was no evidence he could earn more, and there is no legal requirement that a parent must "invade assets" to visit his child. But the trial court determined father had the potential to earn far more income than as a part-time ski instructor and that he could access up to $100,000 in Montenegro. Father does not specifically address those conclusions, which we presume are supported by substantial evidence absent a showing to the contrary.

In any event, father argues the "central issue" is the third problem of international move-away orders, jurisdiction for enforcement of visitation. "Unless the law of the country where the children are to move guarantees enforceability of custody and visitation orders issued by American courts, and there may be no such country, the court will be required to use its ingenuity to ensure the moving parent adheres to its orders and does not seek to invalidate or modify them in a foreign court." (*Condon*, 62 Cal.App.4th at pp. 547-548.) Citing this sentence, father claims the trial court did not sufficiently ensure its orders would not be invalidated or modified in Ireland. He argues that if mother pursues contrary orders in Irish courts, the penalty imposed by the trial court here is "so slight as to render the requirement insulting and meaningless."

As we explained in footnote 2, the trial court child custody judgment directly addressed father's concern about jurisdiction by ordering mother to take various actions. The custody orders were signed July 3, 2013. Judgment was entered July 19, 2013.

The parties reported back to the trial court on May 29, 2014. The trial court noted there had been an unanticipated delay because of mother's attempt to register the order in Ireland as a mirror or equivalent order. The trial court considered three opinions on the subject issued by the High Court for Family Law in the Republic of Ireland. The trial court acknowledged there was a possibility the Irish courts could assume jurisdiction if the child later became a habitual resident of Ireland and the intervention of Irish courts was required to protect his best interests. Nonetheless, the trial court concluded mother had complied with the conditions imposed for the move-away order and/or had demonstrated a factual or legal inability to comply.

Specifically, the trial court found that mother had taken the following actions in compliance with its July 2013 orders: (a) sworn under penalty of perjury that she would not file an action in any court in Ireland involving custody or visitation of the child; (b) made a good faith attempt to register the order with the enforcing authorities of the Hague Convention then presented the court with letters from the State Department and

9

the Republic of Ireland establishing that such registration was impossible; (c) affirmed under penalty of perjury that any requests for modification could be made only in California; (d) attempted to register the order in an Irish court as a "mirror" or "equivalent" order; (e) was unable to obtain a bond but complied with the alternate order to deposit $15,000 into the court's escrow account; (f) consented and stipulated to an order that her violation of any condition of the court's order would be deemed a substantial change of circumstances and detrimental to the child's best interests; (g) expressly acknowledged in open court that the parental kidnapping statute, United States Code title 18, section 1204, applies to her and that she waived jurisdiction on any arrest warrant issued pursuant to that law;[4] (h) made a good faith attempt to establish a travel account despite father's resistance;[5] (i) affirmed under oath that she would cooperate with any action filed in Ireland or the United States related to international child abduction; (j) affirmed under oath that she would forfeit any interest in jointly held assets in Florida or California if she failed to cure a violation of the court's order; (k) agreed to keep father apprised at all times of the child's location to facilitate frequent electronic visitation and to assure father she was not trying to conceal child; (l) made a good faith effort to cooperate with father in establishing guardianship of child under Irish law and agreed not to withhold consent if father later chose to seek guardianship rights; (m) complied with the trial court's order to get counseling.

Father renewed the argument he made at the time of judgment that *Condon* required denial of a custodial parent's requested move-away plan unless the court could

---

[4] She later executed a formal declaration expressly waiving extradition for parental kidnapping or failure to comply with return orders.

[5] The trial court ordered mother to set up an account and tell father about it; both parties were directed to deposit net rental income from the parties' property in California into the account and use it to pay for visitation-related travel expenses.

guarantee enforceability of its custody and visitation orders.  The trial court reviewed *Condon* once again and noted that the court in *Condon* had imposed concessions of jurisdiction and sanctions because, in that case as in this one, guarantees of perpetual jurisdiction were impossible.  The trial court rejected father's contention that the concessions and prospective sanctions imposed by the judgment and order were inadequate.

Father raises identical arguments to this court.  The trial court concluded the Irish court "went as far as the law in Ireland allowed in foreseeing future deference to this court's orders" and acknowledged that it fell short of absolutely guaranteeing exclusive jurisdiction in California until the child reaches the age of majority.  Nonetheless, the Irish court imposed its own orders mirroring the California orders in many respects and did what it could to assure father's right to frequent and continuing contact with the child in both countries.

The trial court characterized the position of the Irish court as acknowledging father's paternity and supporting father's right to spend time with his son, but being unwilling to promise that it would never under any circumstances issue orders to protect the child's best interest if such orders appeared to be necessary.  The Irish court accorded "grave consideration" to the California visitation orders and imposed substantially equivalent orders in Ireland.  Its actions went "far beyond" what the trial court had expected.

Acknowledging the difficult circumstances and father's concern about enforceability, the trial court carefully considered the facts and the law and crafted a detailed order to address the *Condon* problems.  We do not agree with father's assertion that the move had to be denied absent absolute guarantees from Ireland.  The move-away order adequately met *Condon's* standards for preserving parent-child relationships as much as possible under difficult circumstances.

11

We conclude the standards for international child relocation did not weigh against the child's relocation to Ireland.

DISPOSITION

The trial court's judgment and postjudgment order are affirmed.


/S/
Mauro, J.

We concur:


/S/
Robie, Acting P. J.


/S/
Hoch, J.