Filed 12/17/20  Blackburn v. Alarcon CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| DAVID RICHARD BLACKBURN,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TANIA OLIVA ALARCON,<br><br>Defendant and Appellant. | B302746<br><br>(Los Angeles County<br>Super. Ct. No. 19STFL02659) |

APPEAL from an order of the Superior Court of Los Angeles County, Rolf M. Treu, Judge.  Affirmed.

Law Office of Benjamin Kanani and Benjamin F. Kanani for Defendant and Appellant.

The Broadway Law Firm and Anthony J. Catena for Plaintiff and Respondent.

_____

The superior court issued a domestic violence restraining order (DVRO; Fam. Code, § 6200 et seq.) protecting David Richard Blackburn and his two children from his estranged wife, Tania Oliva Alarcon. The court denied Alarcon's competing request for a DVRO. Alarcon appealed. For the reasons below, we affirm the order.

## BACKGROUND

Blackburn and Alarcon married on February 24, 2018. Approximately one year later, Blackburn informed Alarcon that he planned to end their marriage. In response, Alarcon moved out of the residence. Afterward, a series of altercations ensued between the parties.

On March 7, 2019, Blackburn filed a request for a DVRO to protect himself and his two children from a prior marriage (ages 9 and 12). Alarcon filed a DVRO request on April 29, 2019. The trial court conducted a trial on October 2, 2019, to adjudicate both petitions. The court heard testimony from Blackburn, his former tenant Carola Bianchi, his companion Michelle Vega, and Alarcon.

### A.    February 9, 2019, Incident[1]

Blackburn's evidence showed that on February 9, 2019, Alarcon entered his home at approximately 3 o'clock in the morning. She engaged in an argument with Vega, pulling her hair and attempting to block her from descending the staircase.

_____

[1] Whether this incident began early in the morning of February 9 or February 10 is unclear from the record. Precisely when the incident occurred does not affect our reasoning, and we refer to this first incident as the February 9, 2019, incident for purposes of clarity.

Bianchi awoke to the sound of people screaming. When she opened the door of her bedroom, she saw Alarcon screaming at Blackburn and standing in the front doorway, preventing him and Vega from leaving the home.

Once Blackburn and Vega exited the house, they entered a hired car in order to leave. Alarcon moved to the front of the car and blocked it to prevent it from moving. Alarcon allowed the car to leave once Blackburn exited the vehicle. The police arrived. After they prepared a report, Alarcon collected some personal items and left.

Alarcon denied pulling Vega's hair, instead testifying that Vega strangled her on the staircase by placing her hands around Alarcon's neck. Alarcon admitted standing at the front door to prevent Blackburn and Vega from leaving, at which point Blackburn grabbed her arms and pushed her against the door while Vega slapped her. Once the three exited the home, Vega threw Alarcon down onto the driveway and Blackburn restrained her again while Vega hit and slapped her. This beating left Alarcon bleeding and in shock. When the police arrived, however, Alarcon did not remember whether she showed the officers the injuries she claimed were caused by Blackburn and Vega.

Alarcon went to a nearby hospital emergency room for treatment. While there, she was joined by her friend Olga. At first, she testified that Olga took photographs of her injuries. When Alarcon introduced the photographs as evidence, however, she testified they were taken by the hospital medical staff. Alarcon agreed that she appeared in the photographs alternatively in a hospital gown, a black top, a sweatshirt, and once with a necklace that did not appear in the other

photographs.  When the trial court questioned her about the changes of clothing, she was unable to provide a clear explanation, only stating that she was cold.

**B.	February 14, 2019, Incident**

Blackburn testified that Alarcon returned to the residence again on February 14, 2019, at 3 o'clock in the morning with a law enforcement escort.  Alarcon retrieved some possessions and left the residence.

Alarcon testified that she was afraid of Blackburn after the events that took place on February 9.  When asked why she returned to the home on February 14 if she was afraid of Blackburn, she said she was "completely dependent on him financially," and she had to return to gather some belongings.  When asked what she retrieved from the home, she initially answered "a sweater."  She followed this response by identifying a few other belongings, including clothing she wanted to sell on a website.

**C.	February 21, 2019, Incident**

On February 21, 2019, Bianchi called Blackburn and reported that Alarcon had returned to the home a third time.  Alarcon was "screaming and shouting."  Alarcon left before Blackburn returned home.  Later, Blackburn sent Alarcon text messages hoping to expedite the divorce process.  In response, Alarcon threatened to come back to the house "in the same way she had done over the last few weeks."

Alarcon agreed she went to the home a third time on February 21, 2019, at 3 o'clock in the morning.  The purpose of this visit was to pick up clothing to sell online.

**D.    The Trial Court's Ruling**

The trial court denied Alarcon's petition.  It granted Blackburn's request for a three-year DVRO naming Blackburn and his two children as protected persons.

In announcing its ruling, the court found Alarcon's testimony was not credible, stating it had "grave doubts about the believability of [Alarcon], given the nature of her testimony, the number of inconsistencies, the manner in which she testified, very importantly the lack of Olga being here to testify, the lack of peace officers being here to testify to verify the various claims made by [Alarcon] relative to what they saw at the scene.  And most importantly, the records of [the hospital] which the court is told exist but have not been presented to the court, either by subpoena or testimony of any emergency worker."  The court further stated it had "grave concern" about the photographs taken at the hospital purporting to show Alarcon's injuries.  The court observed Alarcon was wearing different clothing in the various photographs, and stated it was "difficult for the court to believe that the emergency room personnel would have the time for the taking of the [photographs] of a patient three different times . . . ."

Alarcon timely appealed.

## DISCUSSION

**A.    Applicable Legal Standards**

The Domestic Violence Prevention Act (DVPA) authorizes a trial court " 'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved' " if evidence shows " 'reasonable proof of a past act or acts of abuse.' "  (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416,

5

1424.)  "Abuse" is defined by the DVPA to include physical violence, sexual assault, or "behavior that has been or could be enjoined pursuant to [Family Code s]ection 6320."  (Fam. Code, § 6203, subd. (a).)  "[Family Code s]ection 6320 broadly provides that 'disturbing the peace of the other party' constitutes abuse for purposes of the DVPA."  (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497.)  " '[D]isturbing the peace of the other party' " is "conduct that destroys the mental or emotional calm of the other party."  (*Ibid.*)

We review an order granting a protective order under the DVPA for abuse of discretion.  (*In re Marriage of Nadkarni, supra,* 173 Cal.App.4th at p. 1495.)  In reviewing the evidence, we apply the substantial evidence standard of review.  (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226; *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143.)  Under this standard, " ' "[w]e must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment." ' [Citation.]"  (*Burquet, supra,* at p. 1143.)  If there is substantial evidence, we must affirm the judgment unless the trial court "exceeded 'the bounds of reason,' " or applied the wrong legal standard in exercising its discretion.  (*Id.* at p. 1144.)

## B.    The Trial Court's Ruling is Supported by Substantial Evidence

Alarcon contends the trial court arbitrarily found her not credible and failed to give appropriate weight to evidence supporting her version of the events.  She argues the trial court rested its ruling on the limited evidence involving the hospital photographs in which she appeared in different clothing.

"The trial court sits as trier of fact and it is called upon to determine that a witness is to be believed or not believed. This is the nature of fact finding. 'The trier of fact is the sole judge of the credibility and weight of the evidence . . . .' [Citation.]" (*In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099.) "A trier of fact is free to disbelieve a witness . . . if there is any rational ground for doing so." (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043.) On appeal, we defer to the trial court's credibility findings, which are binding on appeal in the absence of a showing that the trial court's judgment is arbitrary, capricious, or exceeds the bounds of reason. (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175-1176.)

The trial court's reasons for questioning the validity of Alarcon's photographs were well grounded, based on its observation that Alarcon appeared in different clothing in the various photographs.[2] In addition to the lack of third party witnesses to support her version of events, as well as the absence of any medical records substantiating her claims of physical abuse, Alarcon's testimony was frequently inconsistent and her explanations implausible. We conclude the trial court's credibility finding was premised on rational grounds.

---

[2] The photographs that were marked as exhibits at the time of trial were not included in the record on appeal. The record, however, does include Alarcon's second amended declaration filed on August 8, 2019, in support of her DVRO petition. The declaration includes a reference to photographs of Alarcon's injuries which were taken at the hospital. Those photographs are consistent with the description of the photographs the trial judge reviewed.

Alarcon also contends the trial court denied her the opportunity to present evidence of abuse by Blackburn that predated their marriage. This argument is specious, as the record clearly shows she testified about alleged incidents of abuse that occurred in December 2016, and November and December 2018.

To the extent that Alarcon challenges the trial court's ruling in favor of Blackburn, we note that "[t]he testimony of one witness, even that of a party, may constitute substantial evidence" supporting the issuance of a DVRO. (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703.)

The evidence showed that Alarcon entered Blackburn's home at 3 o'clock in the morning on three occasions without permission. On the first occasion, she was screaming, she pulled Vega's hair, she blocked Blackburn and Vega from leaving the house and from driving away in their hired car. On the second and third occasions she entered the home solely to obtain clothes to sell on an online marketplace. Bianchi reported Alarcon was screaming during the third incident. In a subsequent text message, she threatened to continue reentering Blackburn's home "in the same way." This is substantial evidence of "abuse" within the meaning of Family Code section 6320 by engaging in "conduct that destroys the mental or emotional calm of the other party." (*In re Marriage of Nadkarni, supra*, 173 Cal.App.4th at p. 1497.)[3]

---

[3] Neither Alarcon's notice of appeal nor her briefing indicates whether she is appealing both the grant of Blackburn's petition as well as the denial of her petition. To the extent she challenges the denial of her petition on appeal, we affirm the court's ruling for the reasons stated above.

**DISPOSITION**

The order is affirmed. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED


FEDERMAN, J.*


We concur:



CHANEY, J.



BENDIX, Acting P. J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


9