Filed 12/6/21  Sanchez v. Sanchez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KATHRYN DIANE SINGLETON SANCHEZ,<br><br>        Appellant,<br><br>        v.<br><br>RICHARD LEE SINGLETON SANCHEZ,<br><br>        Respondent. | G060056<br><br>(Super. Ct. No. 20V001773)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Michael E. Perez, Judge.  Affirmed.

Arc Point Law and Mark Piesner for Appellant.

Richard Lee Singleton Sanchez, in pro. per., for Respondent.

\*        \*        \*

Appellant Kathryn Diane Singleton Sanchez appeals from a domestic violence restraining order (DVRO) issued against her. We affirm because the record supports the court's determination that Kathryn's conduct disturbed the peace of her adult son according to applicable legal principles.

I

FACTUAL AND PROCEDURAL HISTORY

In September 2020, Kathryn showed up at the home of her 41-year-old son, Richard Lee Singleton Sanchez, twice on the same day.[1] On her second visit, Kathryn refused to leave until police officers arrived, frightening Richard and his two children.

Until 2015, Richard had lived with Kathryn for 36 years in her home in another country. Richard claimed he was unable to leave earlier due to financial circumstances and that before he had left, Kathryn had once "pick[ed] on [his] daughters for absolutely zero reason."

At the hearing on his DVRO request, Richard testified that when he had been a child, Kathryn had subjected him to physical and emotional abuse. Richard testified that, prior to September 2020, he had not communicated with Kathryn for at least five years. On the day of the incident at issue, Kathryn ignored his wife's e-mail requesting she leave Richard and his family alone, returned to his home, refused to leave, banged on the door, and held down the doorbell for an extended period of time. After Kathryn ignored Richard's warning he would call the police, he did so and she was contacted by officers in front of the home.

Richard asserted to the trial court that Kathryn had threatened him "[i]ndirectly by not leaving" from the front of his home where the only entrance and exit

---

[1] Because the appellant and respondent share a surname, we will refer to them by their first names to avoid confusion; we intend no disrespect.

was.  Richard said his family "just want[ed] to be left alone.  That's all we want.  If that has to be in a form of a restraining order or a promise or a note, that's all, that would help us a lot, just to have some closure."

In contrast, Kathryn testified she had "got[ten] along well" with Richard and simply lost touch with him after 2014.  She claimed she had not known that Richard did not want to communicate with her, but also testified she previously had sent e-mails to Richard and his wife and "never once received any replies."  She explained she had shown up at Richard's home after she "found his address" because she "just wanted to see [her] son, his wife, and [her] grandkids and just give them a hug."

Kathryn explained that, when she first showed up at Richard's home in the early afternoon, his wife answered the door and walked with Kathryn for an hour to help find her car.  Kathryn said she returned to Richard's home later at night because she had been "really determined to see him," to say hello and give him a hug.  Kathryn testified that when Richard opened the door, he became angry, insisted she leave, and warned he would call the police and seek a restraining order.  Kathryn testified she remained determined, "rang the doorbell and knocked on the door a few more times."  Kathryn denied that Richard's wife had told Kathryn to leave Richard and his family alone.

After hearing testimony, the trial court issued a five-year DVRO against Kathryn, concluding Richard had been the victim of conduct by Kathryn that had amounted to abuse "within the meaning of . . . Family Code section[s] 6203 and 6320." The court cited to *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483 (*Nadkarni*) for the proposition that disturbing the peace of a party requesting a DVRO could sufficiently justify its issuance.  The court explicitly found Richard's testimony credible that Kathryn had made "repeated efforts to contact" Richard and his family despite the fact it had been "unwanted."  The court also found credible Richard's testimony about the emotional impact of Kathryn's conduct on him and his children.

II

DISCUSSION

Kathryn contends the trial court erroneously issued the DVRO because "the totality of the circumstances d[id] not demonstrate she destroyed the mental or emotional calm of [Richard] or his family."

A. *Standard of Review and Applicable Legal Principles*

We review a DVRO issuance for abuse of discretion. (*Nadkarni, supra*, 173 Cal.App.4th at p. 1495.) "'All exercises of discretion must be guided by applicable legal principles . . . which are derived from the statute under which discretion is conferred. [Citations.] . . . . [A] discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal. [Citation.]' [Citation.] 'The question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review [citation].' [Citation.]" (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 820-821.) We affirm the trial court's express and implied factual findings if supported by substantial evidence (see *People v. Tully* (2012) 54 Cal.4th 952, 979 (*Tully*)); the appellant bears the burden to overcome the presumption the court's order is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

The Domestic Violence Prevention Act (Family Code, § 6200 et seq.)[2] authorizes a DVRO issuance to prevent, among other things, "stalking, . . . harassing, . . . contacting, either directly or indirectly, . . . coming within a specified distance of, or disturbing the peace of the other party." (§ 6320, subd. (a).) A "child of a party" may request a DVRO (§§ 6211 and 6301, subd. (a)) that may be issued based on "reasonable proof of a past act or acts of abuse" (§ 6300, subd. (a)), by a preponderance of the evidence. (See *McCord v. Smith* (2020) 51 Cal.App.5th 358, 363-364, 368.)

---

[2] All further statutory designations are to the Family Code.

4

Section 6320, subdivision (c), provides in relevant part that: "'disturbing the peace of the other party' [as used in section 6320, subdivision (a)] refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party. . . . This conduct includes, but is not limited to, coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty."

The statute is consistent with the *Nadkarni* line of cases, taking a broad view of trial court discretion in determining what conduct sufficiently disturbs the peace of a party requesting a DVRO. (See *Nadkarni, supra*, 173 Cal.App.4th at pp. 1497, 1498 ["'disturbing the peace of the other party' in section 6320 may be properly understood as conduct that destroys the mental or emotional calm of the other party . . . [¶] . . . [¶] . . . we believe that the Legislature intended that the [Domestic Violence Prevention Act] be broadly construed"].)

B. *Application*

Kathryn frames her September 2020 contacts in a light most favorable to her position. For example, she asserts Richard "merely had a visitor outside of his [home who] was friendly," to argue her conduct did not warrant a DVRO. This ignores the respective roles of the trial court and this court. (*Tully, supra*, 54 Cal.4th at p. 979.) The record before the trial court supports the court's exercise of its discretion in concluding Kathryn's actions amounted to a destruction of Richard's mental or emotional calm, as contemplated by section 6320, subdivision (c).[3]

Substantial evidence supports the trial court's findings. The court found Richard's testimony that he had been both physically and mentally abused as a child by Kathryn credible. Richard's testimony concerning the history of the relationship

---

[3] Section 6301, subdivision (c), provides: "The length of time since the most recent act of abuse is not, by itself, determinative. The court shall consider the totality of the circumstances in determining whether to grant or deny a petition for relief."

5

reinforced the court's findings, express and implied, that Kathryn's repeated and unwanted attempts to engage during her September 2020 contacts had caused Richard to suffer severe emotional distress.

Our conclusion is supported by *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140. In that matter, an ex-boyfriend showed up to the house of the petitioner and refused to honor a request to be left alone by the petitioner who was frightened by the visit. (*Id*. at p. 1142.) On appeal, the court affirmed the issuance of a DVRO against the ex-boyfriend. The court concluded that substantial evidence showed the ex-boyfriend engaged in conduct that included: contacting the petitioner against her wishes; showing up "unannounced and uninvited" at her residence; and then making a scene when the petitioner refused to see him for the purpose of renewing their relationship that had ended at least five months earlier. (*Id.* at pp. 1142, 1144.) The similarity in the totality of circumstances in *Burquet* supports our conclusion that the trial court did not abuse its discretion in this case.

In contrast, the authority cited by appellant, *Curcio v. Pels* (2020) 47 Cal.App.5th 1 and *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249 (*S.M.*), does not support reversal in this case. *Curcio* involved two romantic partners where the petitioner secured a restraining order based upon, among other allegations, her partner's private social media post about the petitioner. (*Curcio, supra*, 47 Cal.App.5th at p. 7.) The appellate court held the private post was insufficient to support the issuance of the restraining order (*id.* at pp. 12-13).[4] A private social media post is not analogous to repeated attempts at direct physical contact in front of the requesting party's home.

---

[4] In reaching its disposition, the *Curcio* court also analyzed the petitioner's alternative allegation of a violent incident. The appellate court concluded the allegation did not justify affirmance of the issued DVRO because the trial court erroneously had shifted the petitioner's burden of proof on that point and had failed to find the alleged incident occurred. (*Id.* at p. 14.)

6

*S.M.* is also unhelpful to Kathryn's position. That case involved a dispute between the parents of a toddler where the mother expressed a desire to move back to her home state to raise the child. (*S.M., supra*, 184 Cal.App.4th at pp. 1251, 1253.) After the father secured an order restraining the mother from removing the child from California, the couple argued and the mother called the police, resulting in the father's arrest. (*Id.* at p. 1254.) The mother asserted the father threatened her (*id.* at p. 1254), badgered her, called her derogatory names, and refused to leave the room despite her request to do so (*id.* at p. 1258). Police reports described the father as badgering the mother based on "his refusal to give [her] permission to take [their child out of California] without her signing a stipulation that she would return with the child" and his "refusal to agree to let [the mother] take [their child] out of the house" for her booked flight out of California with the child later that day. (*Id.* at p. 1266)

Although "the trial court specifically declined to find [the father] made a threat against [the mother] as [she] claimed" (*S.M., supra*, 184 Cal.App.4th at p. 1265), it issued a DVRO against the father (*id.* at p. 1262). In reversing, the appellate court reasoned that "without a finding that [the father] threatened [the mother], the evidence of [the father]'s conduct, [wa]s legally insufficient, by itself, to support issuance of a restraining order." (*Id.* at p. 1265.) The reviewing court further concluded that the trial court did not find, and the evidence did not support finding, conduct that constituted harassment or abuse. Rather, father's "behavior demonstrated that he was 'highly concerned about losing contact with [his] child,' a concern that the court found to be 'certainly commendable.'" (*Id.* at p. 1266.)

In this case, where Kathryn had no legal right to contact with Richard or his family, the trial court found, and the record supports the conclusion, that Kathryn's continued acts at Richard's home, after he repeatedly communicated his wish that she leave him alone, amounted to disturbing Richard's peace within the meaning of section

6320, subdivision (c).[5]  (See *United States Department of Defense v. Federal Labor Relations Authority* (1994) 510 U.S. 487, 501, ["the privacy of the home . . . is accorded special consideration in our Constitution, laws, and traditions"].)  Appellant has not demonstrated grounds for reversal.

III

DISPOSITION

The order is affirmed.  Richard is entitled to recover costs on appeal.

ZELON, J.*

WE CONCUR:

MOORE, ACTING P. J.

FYBEL, J.

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

---

[5] Appellant also contends that she offered to stipulate to leave petitioner's family alone, but petitioner indicated that was of concern to him in light of past behavior. The trial court did not abuse its discretion in responding to those concerns.