Filed 5/31/24  In re Ivan R. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re IVAN R., a Person Coming Under the Juvenile Court Law. | B323647 |
| _____ | (Los Angeles County Super. Ct. No. 22CCJP02792) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
|     Plaintiff and Respondent, | |
|     v. | |
| I.R., | |
|     Defendant and Appellant; | |
| C.F., | |
|     Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charles Q. Clay III, Judge.  Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant I.R.

Jesse Frederic Rodriguez, under appointment by the Court of Appeal, for Defendant and Respondent C.F.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

In this juvenile dependency proceeding, I.R. (Father) appealed from:  (1) an order denying Father's request for a restraining order against C.F. (Mother); (2) an order granting Mother's request for a restraining order against Father; and (3) dispositional orders concerning Father and Mother's son, Ivan R.  Father also challenges the sufficiency of the evidence supporting the court's jurisdictional finding.  We conclude that the court did not abuse its discretion in ruling on the respective requests for restraining orders, and Father's challenges to the dispositional orders are moot because a subsequent custody order incorporating the dispositional orders is final.  Although Father acknowledges that we need not consider his challenge to the jurisdictional finding because jurisdiction based on Mother's conduct is unchallenged, he requests that we exercise our discretion and review the finding as to him.  We decline to do so because Father has failed to support his request that we exercise such discretion.  Accordingly, we affirm the orders.

## FACTUAL AND PROCEDURAL HISTORY

### A.    *Background*

In June 2022, Father was living in an apartment with Ivan's paternal grandparents, a paternal aunt, and the paternal aunt's four children.  Ivan was 1 year 8 months old.  At that time, Mother and Father had an informal custody arrangement whereby Ivan lived with Father and the paternal grandparents during the week and with Mother on the weekends.  According to Mother, she had

2

been picking up Ivan "every weekend and sometimes during the week with no issues."

On June 30, 2022, a court granted the paternal grandparents' temporary guardianship of Ivan. The guardianship order was made without notice to Mother and, DCFS later concluded, based on the paternal grandmother's false statements about Mother. At about 6:30 p.m., Mother arrived at the house to pick up Ivan. Witnesses gave different accounts of the altercation that ensued.

According to Mother, Father called her to have her pick up Ivan. Mother, who was unaware of the grandparents' guardianship order, claims it "was a set up." When she arrived, Father and Mother initially talked in an alley outside the home. Father told Mother that she could not take Ivan because the paternal grandfather did not want her to take him. Mother approached the open front door to the residence and could see Ivan walking towards her saying, "mom, mom." The paternal grandfather started to close the door on Mother, and Mother pushed the door open to get to Ivan. The paternal grandmother then grabbed Ivan by the arm and took him into a bedroom. Mother grabbed the paternal grandmother's arm "to get her son." (Boldface omitted.) The paternal aunt then grabbed Mother by her hair and pushed her and hit her. Mother "hit them back." Father told Mother, "You're not going to hit my mom, bitch." Father put Mother in a headlock, grabbed her throat, and pinned her against the wall. He choked her for two or three seconds until the paternal aunt told him to stop. Mother then left the residence. Mother told the social worker that she knew hitting the others was not right, but explained that she was defending herself.

According to Father, Mother arrived at the home "uninvited and began banging on the door." Father spoke with Mother in an alley outside the home. Mother asked to see Ivan, but Father told

3

her Ivan was sleeping and Mother could not see him "right now." Father told Mother she could "return the next day when she was not so upset." The paternal aunt approached them and told Mother to leave. Mother, however, went to the front door, where she and the paternal aunt began fighting. When the paternal grandfather opened the door slightly, Mother pushed the door and forced her way inside. Mother and the paternal aunt continued to fight. Father said he tried to separate them by grabbing Mother from behind. He denied striking Mother, grabbing her by the neck, or placing her in a chokehold. He also blocked the door to the bedroom, where the paternal grandmother had taken Ivan, to prevent Mother from entering. Mother hit Father in the back and three times in the face with a closed fist. The paternal grandmother's arms "got scratched" when she tried to defend Father against Mother's punches.

According to the paternal grandmother, Mother came to the house, "broke down" the doors, and "began attacking [the] paternal aunt" and Father. While the paternal grandmother held Ivan, Mother tried "to rip him away." The paternal grandmother saw Mother hit Father, and did not see Father or the paternal aunt hit Mother. The children in the home "were crying because they witnessed everything." (Boldface omitted.)

The paternal grandmother further stated that Father comes to the house to sleep, but "is hardly [there]." He "does not buy diapers or anything for Ivan." Although Father "loves [Ivan,] . . . he has never taken full responsibility for him. [The parental grandparents] are the ones that have raised Ivan."

The paternal grandfather told a social worker that Mother "came barging into the house," punched him, and "attacked [the] paternal aunt and [F]ather." She also "injured [the] paternal grandmother's arm."

4

Sheriff's deputies responded to the scene. The paternal aunt told a deputy that Mother tried to force her way into the residence and punched the paternal aunt in the face about three times and pulled her hair.

The day after the incident, Mother filed a police report regarding the June 30 incident. Mother told deputies that after she pushed the door open, the paternal aunt grabbed Mother's hair and punched and scratched her. She reported that Father pushed her up against a wall with both hands around her throat for two to three seconds, until the paternal aunt told him to stop and pushed Father away. The deputy noted redness around Mother's eye and left cheek, abrasions on her right and left upper chest area, and bruising to her triceps and elbow.

On July 15, 2022, the court issued a protective custody warrant authorizing DCFS to remove Ivan from the paternal grandparents. A social worker transported Ivan from the paternal grandparents' home to Mother's home, where Mother lived with her eight-year-old daughter J.C.

On July 19, 2022, DCFS filed a petition under Welfare and Institutions Code section 300, subdivision (b)(1), alleging the following. On June 30, 2022, Mother, Father, the paternal aunt, and the paternal grandmother "engaged in a verbal and physical alter[c]ation in the presence of the child." When Mother attempted to force her way into the home, the paternal aunt attempted to block the doorway. The paternal aunt and Mother struck and scratched each other and pulled each other's hair. Mother forcefully entered the home and grabbed the paternal grandmother's arm to get Ivan. The paternal aunt grabbed Mother's hair and Mother pushed the paternal aunt. The paternal grandmother grabbed Mother's arm and Mother pulled the paternal grandmother's arm. When Father intervened, Mother struck Father's face. Father put

5

Mother in a headlock, grabbed Mother by the throat, and pinned Mother against the wall. The paternal aunt pushed Father away. Ivan was crying during the altercation. Mother sustained soreness to her face and head, redness around her eye and left cheek, abrasions on her chest area, and bruises to her triceps and elbow. The paternal aunt sustained pain to her head and redness and blood around her nostrils, cheeks, forehead, and forearm. The paternal grandmother sustained abrasions to her arms. The "detrimental and endangering situation established for the child by . . . [M]other and [F]ather endangers [Ivan's] physical health and safety, and places [him] at risk of serious physical harm, damage and danger."

In DCFS's detention report, a social worker reported that, in addition to the June 30 incident, there were two prior incidents of domestic violence allegations involving Mother and Father, including an incident in 2017 resulting in Father's arrest "for domestic violence." The social worker further stated that Father's "anger issues put the child at risk of serious physical harm." According to the social worker, the paternal grandparents had "inappropriately obtained temporary guardianship" of Ivan and denied Mother visitation of Ivan. "Moreover, assaulting . . . [M]other in front of the child, not allowing visitation and making misleading allegations puts the child at risk of suffering emotional damage."

On August 2, 2022, the date of the detention hearing, Father and Mother filed requests for restraining orders against the other under the Domestic Violence Prevention Act (the DVPA). (Fam. Code, § 6200 et seq.) Father's application alleged that on June 30, 2022, Mother went to Father's home "with a very aggressive attitude" and "[f]orcefuly entered the home of [the] paternal grandparents and got into a physical altercation with

6

[the] paternal aunt." (Capitalization omitted.) Mother "injured [the] paternal grandmother . . . and [the paternal aunt]." Father blocked Mother "from entering the bedroom where [Ivan] was," and "Mother struck [F]ather in the back and on his face multiple times."

Mother alleged that on June 30, 2022, Father told Mother that he would not release Ivan to her care. Mother heard Ivan cry. Mother then "opened the door and was immediately assaulted by [the paternal aunt]. Father then pushed Mother and held [M]other by her neck for about 2–3 seconds [as the] . . . paternal aunt . . . punched [M]other in the face with a close[d] fist." (Capitalization omitted.) Mother "sustained scratches/redness on her chest area under her neck and face as well as visible bruising on her right bicep[s]/tricep[s] area, and skin scratched off on her upper left cheek." Mother further alleged that "Father has a history of domestic violence against [M]other where he also pushed [M]other, broke her phone, and . . . was subsequently arrested."

At the conclusion of the detention hearing, the court detained Ivan and ordered him released to the home of Mother under DCFS supervision. The court ordered monitored visits by Father.

Regarding the parents' requests for restraining orders, the court granted temporary restraining orders in both cases and set a hearing on the requests for September 13, 2022. Among other restraints, the temporary restraining orders precluded the parties from contacting the other by telephone. The court set the jurisdiction hearing on the dependency petition for the same date.

## B. *Jurisdiction, Disposition, and Restraining Orders*

In DCFS's jurisdiction/disposition report, a social worker reported that, in addition to the June 30, 2022 incident, law enforcement service logs showed that Mother had called police on December 14, 2021 to report that Father had taken Ivan, and

on May 8, 2022, to report that the paternal grandparents were refusing to return Ivan to her. Mother told the social worker that Father previously committed domestic violence against her when he accused her of cheating on him, broke her phone, and pushed her. After Ivan's first birthday, the paternal grandmother asked Mother to give Ivan to her and began telling Mother that Ivan cannot go home with Mother. The paternal grandmother eventually obtained a temporary custody order based on false statements that Ivan was in danger in Mother's custody.

Father reported that Mother frequently got angry and had thrown pliers at him, grabbed his shirt, broke a car window with a video game console, and hit a female friend with whom he was playing bingo.

At the jurisdiction hearing, DCFS submitted on the evidence of its previously submitted reports, which we have summarized above. No other evidence was introduced.

The court found the facts as alleged in the petition to be true and sustained the petition. The court stated that it did not believe that Mother "was a primary aggressor in the sense that she was intending to harm anyone there so much as she wanted to recover her child from persons who were equally determined not to surrender the child." "Father was a part of . . . an . . . agreement to keep the child away from [Mother] and to keep her out of the residence." The court further found that Father's assertion that he "only attempted to intervene" to stop Mother "from continuing her aggression against [the paternal grandmother and the paternal aunt] is not credible."

The court declared Ivan to be a dependent of the court, removed him from Father's custody, maintained him in Mother's custody, and ordered services for the parents. The court ordered Father have monitored visits with Ivan.

8

After the conclusion of the jurisdiction and disposition hearing, the court held a hearing on Father's and Mother's respective requests for restraining orders. Father testified that Mother called him on September 4 in violation of the temporary restraining order to tell him that their son was sick and to ask Father for money. Father believed Mother had called his phone on other occasions, but he did not answer the calls. No other evidence was offered.

The court denied Father's request for a restraining order. The court noted that Mother made her telephone call to Father to ask for money, not "for any purpose of harassment." It was thus an "essentially technical" violation of the temporary restraining order. More importantly, the court reiterated that it "[did] not find that Mother was a primary aggressor at the initial incident." Because there was an insufficient factual basis for the temporary restraining order, the court explained, Mother's telephone call in violation of that order was insufficient to support Father's request for a restraining order.

The court granted Mother's request for a restraining order without comment.

On September 13, 2022, Father appealed from the dispositional orders, the order denying his request for a restraining order, and the order granting Mother's request for a restraining order.

## C. *Six-Month Review Hearing*

On April 17, 2023, the court conducted a six-month review hearing pursuant to Welfare and Institutions Code section 364. The court ordered that Mother is to have sole legal and sole physical custody of Ivan, and Father is to have twice-weekly monitored visitation pending completion of a domestic

9

violence program and a developmentally appropriate parent instruction program. The court then terminated its jurisdiction, and stayed the order pending the receipt of a juvenile custody order.

On April 24, 2023, the court entered the juvenile custody order awarding legal and physical custody to Mother, and providing for Father to have monitored visits twice per week, two hours per visit. The court then lifted the stay on its termination order, and terminated juvenile court jurisdiction over Ivan.

Father appealed from the custody order. We assigned case No. B328886 to the appeal. His appellate counsel filed a brief in that case pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835. We dismissed the appeal on December 29, 2023, and issued the remittitur on March 12, 2024.[1]

## DISCUSSION

### A. *Restraining Order Rulings*

Father argues that the court erred in granting Mother's request for a restraining order against him and denying his request for a restraining order protecting him from Mother. We review both rulings for an abuse of the court's discretion. (*Abdelqader v. Abraham* (2022) 76 Cal.App.5th 186, 195; *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1495.) " '[T]o the extent we are called upon to review the court's factual findings, we apply the substantial evidence standard of review.' " (*Salmon v. Salmon* (2022) 85 Cal.App.5th 1047, 1054.) We presume the court's orders are correct, and the appellant has the burden to affirmatively demonstrate error. (*In re Marriage of Martindale & Ochoa* (2018)

_____

[1] On our own motion, we take judicial notice of the dismissal of the appeal and issuance of the remittitur in case No. B328886. (Evid. Code, §§ 452, subd. (d), 459.)

10

30 Cal.App.5th 54, 59.)  We resolve conflicts in the evidence in favor of the challenged order and draw all reasonable inferences in support of the court's findings.  (*Id.* at p. 61.)

### 1.    *The Granting of Mother's Request for a Restraining Order*

Father contends that the court abused its discretion in granting Mother's request for a restraining order because he did not commit any act of abuse within the meaning of the DVPA.  We disagree.

A court may issue a restraining order under the DVPA "to restrain any person for the purpose specified in [Family Code] [s]ection 6220, if an affidavit or testimony . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse.  The court may issue an order under this part based solely on the affidavit or testimony of the person requesting the restraining order."  (Fam. Code, § 6300, subd. (a).)  The purpose specified in Family Code section 6220 "is to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence."

An act of abuse under the DVPA includes "intentionally or recklessly caus[ing] or attempt[ing] to cause bodily injury" (Fam. Code, § 6203, subd. (a)(1)), and placing "a person in reasonable apprehension of imminent serious bodily injury to that person" (*id.*, § 6203, subd. (a)(3)).  Abuse also included "any behavior that has been or could be enjoined pursuant to [Family Code] [s]ection 6320." (*Id.*, § 6203, subd. (a)(4).)  Family Code section 6320 authorizes an order enjoining a party from, among other activity, attacking, striking, and battering another.  (*Id.*, § 6320, subd. (a).)

11

Here, in support of her request for a restraining order, Mother alleged that Father: "assaulted or attempted to assault" Mother; "caused, threatened, or attempted bodily injury" on her; and caused Mother "to fear physical or emotional harm." More particularly, Mother stated that Father "pushed Mother and held [M]other by her neck for about 2–3 seconds and during this time, [the] paternal aunt . . . punched [M]other in the face with a close[d] fist." (Capitalization omitted.) These statements, made under penalty of perjury, are sufficient to support the court's finding that Father committed abuse against Mother within the meaning of the DVPA.

Father argues that he did not commit any act of abuse and points to his and the paternal grandmother's statements to the social worker whereby they "adamantly denied" that "[F]ather grabbed . . . [M]other by the neck, placed her in a chokehold, or struck . . . [M]other at any point." The court, however, "did not find" Father's statements regarding the altercation with Mother to be credible, and implicitly rejected the paternal grandmother's similar accounts of the incident. Under our standard of review, "we are required to defer to the court's credibility determinations and make all reasonable inferences in support of the court's findings." (*In re Marriage of Martindale & Ochoa, supra*, 30 Cal.App.5th at p. 61.) In light of such deference and the reasonable inference from the record that the court, as a factfinder, believed Mother's conflicting account of the incident, the court did not abuse its discretion in granting Mother's request for a restraining order.

### 2. *Denial of Father's Request for a Restraining Order Against Mother*

Father next contends that the court erred in denying his request for a restraining order protecting him from Mother. He argues that Mother committed abuse against him by punching

him in the back and face multiple times during the June 30 incident and calling him on the telephone in violation of the temporary restraining order. In denying Father's request, the court reiterated that it did not find Father's statements credible and concluded that Father's allegations "were not supported by the facts." Father thus failed to prove his entitlement to a restraining order.

Mother did admit to hitting Father during the July 30 incident. The court explained, however, that she was not the "primary aggressor." Although there is no requirement in the DVPA that a person requesting a restraining order prove that the person to be restrained was a primary aggressor, we can infer from the court's statements that it believed that Mother was reacting to the aggression of others who were acting in concert to keep Mother from taking her child home. By the time of the hearing on the request for the restraining order, however, Ivan was living with Mother. The court was thus aware that the circumstances that triggered Mother's aggression would not likely reoccur and, therefore, reasonably concluded that a restraining order against her was not necessary. (See Fam. Code, § 6220 [the purpose of the DVPA "is to prevent acts of domestic violence [or] abuse"].)

Father further points to the fact that Mother called him to ask for money while a temporary restraining order was in place prohibiting telephone calls between them. The court found, however, that the call was not for the purpose of harassment, and Father does not cite to any authority that would compel the granting of a permanent restraining order for such a violation. The court, we conclude, did not abuse its discretion in denying a restraining order on that basis.

13

## B.     *Father's Other Arguments Are Moot*

Father contends:  (1) The evidence was insufficient to support the court's jurisdictional findings; (2) The evidence was insufficient to support the court's order removing Ivan from Father; (3) The court abused its discretion in ordering enhancement services for Father; (4) The court abused its discretion in making dispositional orders concerning removal, visitation, and Father's services and case plan; and (5) The court abused its discretion in ordering that his visits be monitored.

With respect to the jurisdictional findings, Father acknowledges that we can affirm the court's jurisdiction over Ivan based on the allegations of Mother's conduct, which Mother does not challenge.  As he contends, however, we may "exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction.' " (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763.)

He contends that review of the jurisdictional finding is proper because the finding provided the basis for the court's dispositional orders.  We reject this contention because the court's dispositional orders in this case are no longer subject to appellate review.

After Father filed his opening brief, DCFS requested, and we granted, judicial notice of the juvenile court's order terminating its jurisdiction and the entry of the court's custody order, which includes the custody, placement, visitation, and case plan elements that Father challenges in this appeal.  As noted above, although Father appealed from the juvenile custody order, we dismissed that appeal pursuant to *Phoenix H.*, and our remittitur has issued.  As

14

a result, the matters established in the custody order have been finally adjudicated and we have no power to reverse them. As we explained in *In re S.G.* (2021) 71 Cal.App.5th 654, when a juvenile court's exit order "provide[s] the juvenile court's last word on custody and visitation," "reversing an earlier order on custody and/or visitation could not deliver the desired relief—namely, a change in custody and/or visitation. Even after such reversal, the more recent custody and visitation terms contained in the exit order would govern. To effect an actual change in custody and visitation rights, the appellate court would need to reverse the juvenile court's last word on custody and/or visitation—the exit order terminating jurisdiction on those terms—which . . . the appellate court does not have the power to do if that order has not been appealed." (*Id.* at pp. 666–667.) The same reasoning applies when, as here, the custody order was appealed and then dismissed.[2]

Because we can grant no effective relief as to the dispositional orders that Father challenges, his argument that we should review the jurisdictional finding because the finding underpins the challenged dispositional orders is without merit. If the dispositional orders are effectively beyond appellate review in light of the finality of the custody order, the reversal of a jurisdictional finding would still not produce the desired relief.

Father further asserts that the court's jurisdictional finding "could potentially impact the current or future dependency proceedings or could have other consequences for . . . [F]ather beyond jurisdiction, particularly in his ongoing child custody

---

[2] In its respondent's brief, DCFS contends that Father's arguments concerning the dispositional orders are moot based on the finality of the juvenile court's custody order. Father did not file a reply brief or otherwise respond to these contentions.

15

dispute with [M]other." Although this can be a valid basis for discretionary appellate review (see *In re D.P.* (2023) 14 Cal.5th 266, 285), Father makes only this single speculative assertion without explanation or citation to the record or apposite authority. Accordingly, we decline to exercise our discretion to review the challenged finding.

## DISPOSITION

The orders from which Father has appealed are affirmed.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

BENDIX, J.

16