Filed 5/28/26  H. C. v. Contreras CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| H. C., a Minor, etc.,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>RUDY CONTRERAS,<br><br>    Defendant and Respondent. | F089316<br><br>(Super. Ct. No. 23CEFL03867)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Irene A. Luna, Judge.

Wanger Jones Helsley, Amanda G. Hebesha, John P. Kinsey, and Stephanie Hosman, for Plaintiff and Appellant.

Moran Law Firm, Amanda K. Moran, Janay D. Kinder, and S. Eric Bishop II, for Defendant and Respondent.

-ooOoo-

Bethany G. sought a protective order protecting H. C., her minor son, from H. C.'s father, Rudy C.  Numerous witnesses testified at a hotly contested hearing after which the parties filed closing briefs.  Rudy's brief, submitted by counsel, contained fictitious

caselaw and misstated the law. Counsel for Bethany directly and swiftly pointed the errors out to the trial court.

The trial court declined to issue the requested order, but its ruling erroneously relied on a nonexistent case and a serious legal misstatement—the very same shortcomings Bethany had already noted. As explained below, we reverse for further proceedings.

## BACKGROUND

The parties were married in 2016; H.C. was born later that year. The parties separated in 2019 with the parties now sharing "joint physical custody" of the child.

This matter originated when Bethany filed a "Request for Domestic Violence Restraining Order" "on behalf of" H. C., to protect him from Rudy.[1] In the request, Bethany alleged Rudy "abused [her] for [the] entire marriage"—which ended in separation—and "[n]ow" Rudy had "begun to physically abuse" H. C.

The allegations recited H. C.'s complaint Rudy recently hit him four times and on at least one other prior occasion. Bethany also explained Rudy caused her "[p]sychological, mental and emotional distress, including but not limited to nightmares, stress, fear, shame, dread, guilt, sleeplessness, psychical distress, anxiety, depression, [and] sadness." Ultimately, Bethany sought the order because Rudy's "physical violence towards" H. C. had "increased[.]"

Bethany's request included dozens of photographs and a declaration from a "retained" physician that examined H. C. The doctor opined an injury to H. C.'s neck was "consistent with 'partial ligature marks[.]'" The opinion was based on "several photographs," with the doctor finally concluding the injury was consistent with both Rudy's explanation but also abuse.

_____

[1] The separation and custody case is an ongoing separate matter.

2.

The trial court first declined granting a temporary order, reasoning the matter "[a]ppear[ed] to be child custody/child visitation and requires evidentiary hearing."[2] Rudy filed a response denying he ever "abused [his] son[.]" He claimed Bethany's allegations were "false[.]"

The matter eventually proceeded to trial but not before Child Protective Services (CPS) became involved. CPS opened an investigation after a doctor reported H. C. complained Rudy "pushed him down" four times. Bethany updated her initial allegations, describing "continued" abuse towards H. C.[3]

The trial finally began. Each party presented evidence supporting its position over four days.

After the evidence was presented, but before the trial court ruled, Rudy's counsel filed a closing brief. Most pertinent here, the brief contains the following portions:

"**2) <u>Insufficient Evidence of Harassment or Disturbing the Peace</u>**

"Under Family Code § 6320, abuse can include harassment or disturbing the peace of the other party. However, California courts have held that the behavior must be persistent, egregious, and intended to disturb the victim's peace. In *Enrique M. v. Angelina V.* (2005) 15 Cal.App.5th 788, the court emphasized that disturbing the peace should be understood as conduct that 'destroys the mental or emotional calm of the other party.'

"In this case, the alleged incidents presented by Bethany do not rise to the level of severe, ongoing behavior required to meet the standard of 'harassment' or 'disturbing the peace.' The incidents presented lack the frequency, intensity, or impact required under the statutory definition and supporting case law, rendering them insufficient to constitute harassment or disturbing the peace.

---

[2] Judge Pahoua C. Lor

[3] These additional allegations were contained in an intervening ex parte application to issue a restraining order.

**"3) <u>Failure to Demonstrate Reasonable Fear of Immediate Harm</u>**

"Family Code §6203 also requires that abuse must place the petitioner in reasonable apprehension of imminent serious bodily injury. Petitioner has failed to demonstrate any legitimate, immediate fear of bodily harm that is objectively reasonable under the circumstances."

Bethany, also through counsel, replied to the brief, pointing out the citation to *Enrique M. v. Angelina V.* (2005) 15 Cal.App.5th 788 did not exist.[4] Counsel also noted Family Code section 6203[5] did not require proving "legitimate, immediate fear of bodily harm that is objectively reasonable" before a restraining order may issue.

The trial court[6] issued a written ruling in Rudy's favor. It contains the following pertinent portion:

"<u>Insufficient Evidence of Harassment or Disturbing the Peace</u>

"Under Family Code § 6320, abuse can include harassment or disturbing the peace of the other party. However, California courts have held that the behavior must be persistent, egregious, and intended to disturb the victim's peace. In *Enrique M v. Angelina V.* (2005) 15 Cal.App.5th 788, the court emphasized that disturbing the peace should be understood as conduct that 'destroys the mental or emotional calm of the other party.'

"In this case, the alleged incidents presented by Mother do not rise to the level of severe, ongoing behavior required to meet the standard of 'harassment' or 'disturbing the peace.' The incidents presented lack the frequency, intensity, or impact required under the statutory definition and supporting case law, rendering them insufficient to constitute harassment or disturbing the peace.

---

[4] Bethany's counsel has identified a case, *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, which involved a father's request to modify a custody order and is otherwise inapplicable to the present case.

[5] All undesignated statutory references are to the Family Code.

[6] Judge Irene A. Luna.

4.

## "**Failure to Demonstrate Reasonable Fear of Immediate Harm**

"Family Code §6203 also requires that abuse must place the petitioner in reasonable apprehension of imminent serious bodily injury. Petitioner has failed to demonstrate any legitimate, immediate fear of bodily harm that is reasonable under the circumstances."

Accordingly, the court found insufficient evidence Rudy "abused" H. C. as defined by law and entered judgment in his favor denying the requested protective order.

Bethany timely requested a statement of decision. The trial court never responded to the request.

## DISCUSSION

### A. Trial Court's Reliance on Erroneous Legal Authority

"The [Domestic Violence Prevention Act (DVPA)] (§ 6200 et seq.) authorizes the trial court to issue a restraining order 'for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit … shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse.' " (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1494 (*Nadkarni*).)

" ' "[A]buse" [under the DVPA] means any of the following: … Intentionally or recklessly to cause or attempt to cause bodily injury. … Sexual assault. … To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another. … To engage in any behavior that has been or could be enjoined pursuant to [s]ection 6320.' " (*Nadkarni, supra,* 173 Cal.App.4th at p. 1494, italics omitted; section 6203.)

"The standard of review for an order denying injunctive relief is abuse of discretion, because ' " 'granting, denial, dissolving or refusing to dissolve a permanent or preliminary injunction rests in the sound discretion of the trial court upon consideration of all the particular circumstances of each individual case' …." [Citations.]' (*Salazar v.*

*Eastin* (1995) 9 Cal.4th 836, 849-850.) 'This standard applies to a grant or denial of a protective order under the DVPA.' " (*Nadkarni, supra,* 173 Cal.App.4th at p. 1495.)

" ' "[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." ' [Citation.] 'An order that implicitly or explicitly rests on an erroneous reading of the law necessarily is an abuse of discretion.' " (*In re Domestic Partnership of Campos and Munoz* (2026) 118 Cal.App.5th 1112, 1123 (*Campos and Munoz*).)

Here, in our view, the trial court committed at least two clear legal errors. First, the trial court cited and relied on a fictitious case, i.e., *Enrique M. v. Angelina V.* (2005) 15 Cal.App.5th 788. The error is underscored by the fact Bethany brought the fictitious citation to the court's attention. The court ignored Bethany's warning, and relied on it in its ruling. The trial court clearly incorporated this part of Rudy's brief into its ruling because the ruling is a verbatim reproduction—save for changing "Bethany" to "Mother"—including a spacing typo.[7]

Second, the trial court's ruling reproducing Rudy's brief misstated section 6203, the section defining abuse under the DVPA. Section 6203, subdivision (a) provides four *independent* circumstances constituting abuse:

"(1) To intentionally or recklessly cause or attempt to cause bodily injury.

"(2) Sexual assault.

"(3) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another.

---

[7] Both Rudy's brief and the trial court's ruling state the following two references: "Family Code § 6320" and "Family Code §6203[.]" The second reference is inconsistent with the first in that it omits a space after the section symbol, strongly suggesting it was an unintentional omission. The fact the ruling is identical in this regard indicates the trial court may have copied-and-pasted from Rudy's brief.

"(4) To engage in any behavior that has been or could be enjoined pursuant to Section 6320."

The trial court nonetheless ruled section 6203 "requires that abuse must place the petitioner in reasonable apprehension of imminent serious bodily injury."

The ruling misstates the law. Section 6203 is written in the alternative and not the conjunctive. Each subsection alone can constitute abuse. Immediate bodily injury is not a prerequisite to issuing a protective order.

"We have no difficulty concluding that it is an abuse of discretion for a court to rely in material part on fictional case authorities in rendering a decision or making an order. Reliance on fake cases is fundamentally incompatible with an informed exercise of discretion controlled by genuine principles of law. It seriously undermines the integrity of the outcome and erodes public confidence in our judicial system. It can also hinder meaningful appellate review." (*Campos and Munoz, supra,* 118 Cal.App.5th at pp. 1123-1124.)

"This is not to say that the factors the court relied on were legally improper or that it could not have reached the same result applying proper legal reasoning grounded in genuine law. We hold only that the path the court took to reach its result constituted an abuse of discretion because it relied in material part on the holdings of nonexistent legal authorities" *and* misread the law. (*Campos and Munoz, supra,* 118 Cal.App.5th at p. 1124.)

## B. Trial Court's Failure to Issue a Statement of Decision

It is undisputed that in this case, counsel for Bethany made a timely written request for a statement of decision on December 27, 2024, within 10 days of the trial court's issuance of its tentative ruling on December 18, 2024. This was in accordance with Code of Civil Procedure section 632 and California Rules of Court, rule 3.1590.

The trial court failed to respond to the request for statement of decision in any way. Ultimately, Bethany filed a notice of appeal on February 5, 2025, despite the

7.

absence of a statement of decision or judgment on file. The appeal was taken from the court's ruling.

In *Alafi v. Cohen* (2024) 106 Cal.App.5th 46 (*Alafi*), the Sixth District Court of Appeal explained the importance of a statement of decision in a bench trial, as follows:

> "Code of Civil Procedure section 632 provides that ' "upon the trial of a question of fact by the court," the court "shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." ' [Citations.] A statement of decision need not respond to 'every point raised by a party or make an express finding of fact on each contested factual matter; it need only dispose of all basic issues and fairly disclose the court's determination as to ultimate facts and material issues in the case.' [Citation.]

> 'If a party timely requests a statement of decision, a proposed statement of decision and judgment must be prepared and served on all parties by either the court or a party the court designates.' [Citation.] The request for a statement of decision must be made within 10 days after announcement or service of the tentative decision, whichever is later. [Citations.]

> The statement of decision serves multiple functions. It enables a trial court to review its intended decision and to make 'corrections, additions, or deletions it deems necessary or appropriate.' [Citation.] In turn, that allows a reviewing court to determine what law the trial court employed. [Citation.] A statement of decision thus allows a court to place its view of the facts and law into the record. [Citation.]; see also, *Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 126-127 (*Whittington*) [' "to the court it gives an opportunity to place upon the record, in definite written form, its view of the facts and the law of the case, and *to make the case easily reviewable on appeal* by exhibiting the exact grounds upon which judgment rests" '].)

> At the same time, ' "[t]o the parties, *it furnishes the means, in many instances, of having their cause reviewed without great expense.* It also furnishes to the losing party a basis of his motion for a new trial; he is entitled to know the precise facts found by the court before proceeding with his motion for new trial, in order that he may be able to point out with precision the errors of the court in matters either of fact or law.

8.

[Citation.]" ' (*Whittington, supra,* 234 Cal.App.3d at p. 127.) 'Unless the court complies with its obligation under section 632, the losing party will be deprived of its right to know the precise facts found by the court and the exact grounds upon which the judgment rests.' (*Ibid.*; see also, *Gordon v. Wolfe* (1986) 179 Cal.App.3d 162, 168 [ ] ['without a statement of decision, the judgment is effectively insulated from review by the substantial evidence rule'].) The statement of decision provides a reviewing court 'with the trial court's reasoning on disputed issues and "is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law." [Citation.]' [Citation.]" (*Alafi, supra,* 106 Cal.App.5th 46, 60-61.)

Although a trial court's failure to issue a requested statement of decision is subject to harmless error analysis, our Supreme Court has held that such a failure "may at times require reversal in order for the appellate court to effectively perform a review of the material issues." (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1116.) Such is the case here.

## CONCLUSION

When faced with nonexistent case law and misconstrued statutes *brought to its attention*, the court incorporated the objectionable material into its final ruling. The court's ruling is without doubt an abuse of discretion (*Campos and Munoz, supra,* 118 Cal.App.5th at pp. 1123-1124) and our confidence in the outcome is sufficiently undermined to justify reversal. (See *Rodriguez v. Parivar, Inc.* (2022) 83 Cal.App.5th 739, 757 [undermined confidence is sufficient to satisfy constitutional standard of prejudice].) For all future proceedings in this matter, we direct the matter be assigned to a new trial judge. (See *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1328.)

With respect to Rudy's counsel's actions, "Business and Professions Code section 6068, subdivision (d), states it is the duty of an attorney '[t]o employ … those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law.' California Rules of Professional Conduct, rule 3.3(a)(1) and (2), prohibit an attorney from 'knowingly mak[ing] a false statement of fact or law to a tribunal or fail[ing] to correct a false statement of material fact or law previously made to the tribunal by the lawyer' or

9.

'knowingly misquot[ing] to a tribunal the language of a book, statute, decision or other authority.'  A person's knowledge may be inferred from the circumstances." (*Campos and Munoz, supra,* 118 Cal.App.5th at p. 1128.)

## **DISPOSITION**

The judgment is reversed.   The matter is remanded for further proceedings consistent with this opinion.   Costs are awarded to appellant.

SNAUFFER, J.

WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.

10.